UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

LARRY HARRINGTON,

      Plaintiff,

v.                               Case No:   2:15-cv-322-FtM-38MRM

ROUNDPOINT MORTGAGE
SERVICING CORPORATION and
MULTIBANK 2010-1 SFR VENTURE,
LLC,

      Defendants.
_____/

**<u>ORDER</u>**[1]

    This matter comes before the Court on Defendants RoundPoint Mortgage Servicing Corporation ("RoundPoint") and MultiBank 2010-1 SFR Venture, LLC's ("MultiBank") Partial Motion to Dismiss with Prejudice (Doc. #38) filed on October 22, 2015.  Plaintiff Larry Harrington filed a Response in Opposition to Defendants' Partial Motion (Doc. #39) on November 3, 2015.  Defendants also filed a Notice of Supplemental Authority (Doc. #55) on December 15, 2015.  This matter is ripe for review.

**BACKGROUND**

    Unless stated otherwise, the following facts are drawn from the First Amended Complaint and construed in a light most favorable to Plaintiff as the non-moving party.

---

[1] Disclaimer:  Documents filed in CM/ECF may contain hyperlinks to other documents or websites.  These hyperlinks are provided only for users' convenience.  Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees.  By allowing hyperlinks to other websites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their websites.  Likewise, the Court has no agreements with any of these third parties or their websites.  The Court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

In November 2003, Plaintiff secured a mortgage from Riverside Bank of the Gulf Coast.  (Doc. #37 at ¶ 31).  Sometime thereafter, MultiBank acquired the mortgage and hired RoundPoint to service it.  (Doc. #37 at ¶¶ 32, 34; Doc. #39-1 at 6).  Plaintiff had no relationship with MultiBank or RoundPoint other than to send his mortgage payments to Multibank through RoundPoint.  (Doc. #37 at ¶ 35).

When Plaintiff fell behind on his mortgage payments, RoundPoint began debt collection activities.  As part of those activities, it repeatedly called Plaintiff's cellular and residential telephone numbers using an automatic telephone dialing system or a prerecorded voice.  (Doc. #37 at ¶¶ 36-37, 40, 42-46; Doc. #37-1).  RoundPoint called four cellular numbers (collectively "cell phone numbers") for which Plaintiff was the named subscriber.  (Doc. #37 at ¶¶ 38-39).  According to Plaintiff, he gave neither RoundPoint nor MultiBank his cell phone numbers or permission to call him.  (Doc. #37 at ¶ 47).  Instead, RoundPoint allegedly obtained the numbers from a credit report it accessed.  (Doc. #37 at ¶ 50).

While the above calls were taking place, MultiBank began foreclosure proceedings against Plaintiff on March 1, 2012.  (Doc. #37 at ¶ 41).  Later that same month, Defendants learned that Plaintiff hired an attorney to represent him in the foreclosure action.  (Doc. #37 at ¶ 41).  That counsel later withdrew from representing Plaintiff on May 7, 2013.  (Doc. #38-1).

On May 28, 2015, Plaintiff initiated this action against RoundPoint and MultiBank.  (Doc. #1).  With leave of Court, he filed the First Amended Complaint, which is the operative pleading.  (Doc. #37).  The First Amended Complaint asserts two counts.  Count I alleges that RoundPoint and MultiBank violated the Telephone Consumer Protection Act

("TCPA"), 47 U.S.C. § 227 *et seq*, by calling Plaintiff's cell phone numbers using an automated dialer or a prerecorded voice without his consent.  (Doc. #37 at ¶¶ 52-54). Count II alleges that RoundPoint violated two subsections of the Florida Consumer Collection Practices Act ("FCCPA"), Fla. Stat. § 559.55 *et seq.*  RoundPoint allegedly violated § 559.72(7) by calling Plaintiff and his family with such frequency as could reasonably be expected to harass them.  (Doc. #37 at ¶ 60).  RoundPoint also allegedly violated § 559.72(18) by calling Plaintiff when it knew an attorney represented him on the debt for which RoundPoint was attempting to collect.  (Doc. #37 at ¶ 66).  Plaintiff asserts that each of RoundPoint's communications constitutes a separate and distinct action for which he is entitled to damages.  (Doc. #37 at ¶¶ 61, 67).  Defendants, in response, move to dismiss Count I as to MultiBank only and Count II in its entirety.

## STANDARD OF REVIEW

When considering a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the reviewing court must accept all factual allegations in the complaint as true and view them in a light most favorable to the plaintiff.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  This preferential standard of review, however, does not permit all pleadings adorned with facts to survive to the next stage of litigation.  The Supreme Court has been clear on this point – a district court should dismiss a claim where a party fails to plead facts that make the claim facially plausible.  *See Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007).  A claim is facially plausible when the court can draw a reasonable inference, based on the facts pled, that the opposing party is liable for the alleged misconduct.  *See Iqbal*, 556 U.S. at 678.  This plausibility standard requires "more than a

sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 557 (internal quotation marks omitted)).

**DISCUSSION**

**A.  Count I: Telephone Consumer Protection Act**

The TCPA is a consumer protection statute that imposes restrictions on the use of automatic telephone dialing systems and artificial or prerecorded voice messages when contacting telephone subscribers with commercial messages.  *See* 47 U.S.C. § 227. Here, Plaintiff raises a claim under § 227(b)(1)(A)(iii) of the statute, which makes it unlawful for any person:

> to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a paging service, cellular telephone service . . . or any service for which the called party is charged for the call. . . .

The TCPA is essentially a strict liability statute that does not require any intent except when awarding treble damages.  *See Alea London Ltd. v. Am. Home Servs., Inc.*, 638 F.3d 768, 776 (11th Cir. 2011).

According to Plaintiff, RoundPoint placed nonemergency calls to his cell phone numbers using an automated dialer or a prerecorded voice without his prior express consent.  (Doc. #37 at ¶ 52).  Because RoundPoint made such calls on behalf of MultiBank, Plaintiff alleges that MultiBank violated the TCPA in the same manner.  (Doc. #37 at ¶¶ 53-54).  Defendants move to dismiss this claim against MultiBank, arguing MultiBank did not actually make the calls at issue, and it cannot be vicariously liable for RoundPoint's conduct under the TCPA.  (Doc. #38 at 10-12).  Plaintiff counters that MultiBank is subject to both direct and vicarious liability.  (Doc. #39 at 2-9).

According to Defendants, § 227(b)(1)(A)(iii), by its terms, assigns liability only on the persons who actually "make" the offending calls. (Doc. #38 at 10-11). Defendants arrive at this statutory interpretation by comparing § 227(b)(1)(A) with § 227(c)(5), a sister subsection of the TCPA. (Doc. #38 at 11). As noted above, § 227(b)(1)(A) renders it unlawful to "make" a nonemergency call using an automatic telephone dialing system or a prerecorded voice to a cellular telephone service without the called party's consent. 47 U.S.C. § 227(b)(1)(A). In contrast, § 227(c)(5), which concerns calls to persons on the National Do-Not-Call Registry, imposes liability for multiple calls made "*by or on behalf of*" a person. *Id.* § 227(c)(5) (emphasis added).[2] Defendants aver the differing language in each provision indicates that Congress intended to allow "on behalf of" liability for violations of § 227(c)(5), but not the subsection at issue here. (Doc. #38 at 11).

In emphasizing the contrasting language between § 227(b)(1)(A) and § 227(c)(5), Defendants cite to *Mais v. Gulf Coast Collection Bureau, Inc.,* 944 F. Supp. 2d 1226 (S.D. Fla. 2013). (Doc. #38 at 10). In *Mais*, the defendants sought summary judgment on the ground that they could not be held liable for another defendant's calls under § 227(b)(1)(A). 944 F. Supp. 2d at 1241. The defendants argued – much like MultiBank does here – that "the choice and placement in the different statutory provisions [of § 227(b)(1)(A) and § 227(c)(5)] indicates that Congress intended to allow for 'on behalf of,' or vicariously, liability in section 227(c)(5), but not in section 227(b)(1)(A)." *Id.* at 1241-42. The district court was persuaded by this statutory interpretation, but could not give

---

[2] The full text of § 227(c)(5) provides that "[a] person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may, if otherwise permitted by the laws or rules of court of a State bring in an appropriate court of that State – (A) an action based on a violation of the regulations prescribed under this subsection to enjoin such violation, (B) an action to recover for actual monetary loss from such a violation, or to receive up to $500 in damages for each such violation, whichever is greater, or (C) both such actions." 47 U.S.C. § 227(c)(5).

its stamp of approval because of a Federal Communications Commission ("FCC") ruling to the contrary.  *Id.* at 1242; *see also* 47 U.S.C. § 227(b)(2) (charging the FCC with prescribing regulations to implement the TCPA).  Specifically, in *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 23 F.C.C. Rcd. 559 (2008) ("2008 FCC Ruling"), the agency stated, "a creditor on whose behalf an autodialed or prerecorded message call is made to a wireless number bears the responsibility for any violation of the Commission's rules.  Calls placed by a third party collector on behalf of that creditor are treated as if the creditor itself placed the call."  *Id.* at 565.  As a result, the district court was confronted with the question of whether the 2008 FCC Ruling was entitled to deference on the issue of liability under § 227(b)(1)(A).  *Mais,* 944 F. Supp. 2d at 1242 (footnote omitted).  In answering that question, the court found,

> [w]ith respect to section 227(b)(1)(A), the FCC has provided for vicarious liability where Congress did not.  The FCC cites no authority or support for its determination that creditors are liable for calls placed by third-party debt collectors and . . . [the 2008 FCC Ruling] appears to be inconsistent with the statutory scheme.  Therefore, the [c]ourt will not defer to the FCC's determination.  Instead, it will employ the statute as written and find that only those who make calls in violation of § 227(b)(1)(A) may be held liable.

*Id.* at 1243.

On appeal, the Eleventh Circuit questioned the district court's decision to discard the 2008 FCC Ruling.  *Mais v. Gulf Coast Collection Bureau, Inc.,* 768 F.3d 1110, 119 (11th Cir. 2014).  It found that the district court "exceeded its jurisdiction by declaring the 2008 FCC Ruling to be inconsistent with the TCPA."  *Id.*  It stated the 2008 FCC Ruling had "the force of law" and the district court lacked "jurisdiction to consider [its] wisdom and efficacy."  *Id.* at 1121.  Although the Eleventh Circuit focused on a different portion of

the district court's decision in its ultimate holding, the court was clear in its directions – this Court lacks the power to disregard the FCC's rulings in considering this issue.

Given the Eleventh Circuit's strong language, this Court will not overlook the weight that the 2008 FCC Ruling bears on this case.  Indeed, numerous courts have held that § 227(b)(1)(A) imposes liability upon a showing of vicarious liability.  *See Martin v. Glob. Mktg. Research Servs., Inc.*, No. 6:14-cv-1290-Orl-31KRS, 2015 WL 6083537, at *6 n.6 (M.D. Fla. Oct. 15, 2015) ("A number of courts have indicated that theories of vicarious liability, at least in certain circumstances, may be viable under the TCPA."); *Shamblin v. Obama for Am.*, No. 8:13-cv-2428-T-33TBM, 2015 WL 1754628, at *5 (M.D. Fla. Apr. 17, 2015) (denying summary judgment on the issue of vicarious liability for TCPA violations); *see also Maryland v. Universal Elections, Inc.*, 729 F.3d 370, 378 (4th Cir. 2013) (rejecting the appellants' argument that they could not be liable under the TCPA because they did not actually place any of the offending calls, in part, because "[s]uch a narrow reading would undermine the purpose of the Act and would allow the actual violators to escape liability."); *Jackson v. Caribbean Cruise Line, Inc.*, 88 F. Supp. 3d 129, 135 (E.D.N.Y. 2015) (rejecting the defendant's argument that § 227(b) does not permit vicarious liability under common-law principles); *Melito v. Am. Eagle Outfitters, Inc.*, No. 14-cv-02440, 2015 WL 7736547, at *5 n.11 (S.D.N.Y. Nov. 30, 2015) (stating the court "would be inclined to hold that there can be vicarious liability under the TCPA").  Following this overwhelming precedent, the Court concludes that MultiBank may be held vicariously liable under the TCPA.

To the extent Plaintiff further argues that MultiBank can be directly liable under the TCPA, the Court defers to the 2008 FCC Ruling.  Again, the FCC 2008 Ruling states,

"[c]alls placed by a third party collector on behalf of that creditor are treated as if the creditor *itself placed the call*."  2008 FCC Ruling at 565.  The FCC has ruled, in essence, that a creditor is placed "in the shoes" of the caller for purposes of liability under the TCPA.  *See Hartley-Culp v. Green Tree Servicing, LLC*, 52 F. Supp. 3d 700, 703 (M.D. Pa. 2014).  Thus, the TCPA can impose liability directly on any person or entity on whose behalf a third party places a call in violation of § 227(b)(1)(A).  At this early stage of the case, the Court will not foreclose Plaintiff from pursuing either direct or vicarious liability.

With the foregoing settled, the question becomes whether Plaintiff has pled sufficient factual allegations in the First Amended Complaint to state a claim under either theory.  The Court need not delve into this matter, however, because Defendants do not challenge the sufficiency of Plaintiff's allegations.  Rather, they argue, as a matter of law, that MultiBank cannot be liable for RoundPoint's calls.  Defendants' sole argument for dismissal is based on their statutory interpretation of § 227(b)(A)(1), which is misplaced for the reasons discussed above.  Because Defendants do not challenge the pleading sufficiency of the First Amended Complaint, the Court will not do the work for them.

Accordingly, the Court denies Defendants' Partial Motion to Dismiss Count I as against MultiBank.

## B.  Count II – Florida Consumer Collection Practices Act

The Court now turns to Count II, in which Plaintiff claims RoundPoint violated sections 559.72(7) and (18) of the FCCPA.  (Doc. #37 at ¶¶ 60, 66).  RoundPoint moves to dismiss these claims as barred by the applicable statute of limitations.  (Doc. #38 at 3-5).  To the extent that any part of Count II survives the applicable limitations period, RoundPoint further argues that Plaintiff may only recover $1,000 in statutory damages for

all claims asserted in Count II. (Doc. #38 at 6-10). The Court will address each argument in turn.

### 1. Statute of Limitations

Under the FCCPA, a debtor must commence a civil action within two years after the date the alleged violation. Fla. Stat. § 559.77(4). Plaintiff commenced this suit on May 28, 2015, alleging that RoundPoint made harassing calls to him and his family about a mortgage debt from April 2010 to May 2014. (Doc. #37 at ¶¶ 27-28, 37). Because those calls straddle the two-year statute of limitations line, RoundPoint argues the limitations period bars any conduct predating May 28, 2013. Plaintiff concedes this point and agrees not to seek damages for any violations prior to that date. (Doc. #39 at 16).

Despite Plaintiff's concession, the statute of limitations dispute does not end there. RoundPoint further argues that any calls Plaintiff received *after* May 28, 2013, are also time barred because they were new communications about the same mortgage debt, which did not restart the limitations period. (Doc. #38 at 4-5). Since the first violation is untimely, RoundPoint argues that Plaintiff's entire FCCPA claim is barred. (Doc. #38 at 5).

RoundPoint relies on *Reese v. JPMorgan Chase & Co.,* 686 F. Supp. 2d 1291, 1307 (S.D. Fla. 2009) to support the above argument that new communications concerning an old claim does not restart the limitations period. In *Reese,* the plaintiff sued under the Fair Debt Collection Practices Act ("FDCPA"), the federal companion statute to the FCCPA,[3] claiming defendant incorrectly reported his mortgage balance to

---

[3] In construing the FCCPA, "due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to the federal Fair Debt Collection Practices Act." Fla. Stat. § 559.77(5); *see also Groves v. U.S. Bank*, No. 8:10-cv-2665-T-17TGW, 2011 WL 2192821, *3 (M.D. Fla. June 6, 2011).

credit reporting bureaus from January 2008 through December 2008. *Id.* at 1306-07. The suit was commenced in April 2009, and the defendant moved to dismiss the FDCPA claims based on the statute's one-year limitations period. *Id.* The plaintiff responded that a new cause of action accrued each time defendant made an incorrect report; thus, the statute of limitations did not bar her claims. *Id.* at 1307. The district court noted that the plaintiff failed to provide specific dates for when she allegedly received notice of the incorrect reports and stated,

> [i]f the notices received after January 2008 were concerning the same debt, [p]laintiff's claim under the FDCPA appears to be untimely. [The p]laintiff had notice of the alleged violations since January of 2008, yet did not bring a claim until almost a year and a half later, well beyond the one-year period with in which to bring claims under the FDCPA.

*Id.* In reaching this decision, the district court generically cited to a Minnesota federal case that noted, "where statements concerning the status of a debt are new communications concerning an old claim, the statements do not start a fresh statute of limitations period. *Id.* (citing *Nutter v. Messerli & Kramer, P.A.*, 500 F. Supp. 2d 1219 (D. Minn. 2007)).

The Court does not find *Reese* to be persuasive here. Plaintiff has adequately pled that, within the two-year limitations period, RoundPoint made over 200 abusive and harassing calls that violate the FCCPA, and he need not rely on the 375 addition calls made outside the limitations period to prove liability in this case. (Doc. #39 at 9-10).

Although there is no case law addressing this statute of limitations issue as it applies to the FCCPA, courts have addressed similar arguments under the FDCPA. Thus, the Court turns to those cases for guidance. Upon review of this body of law, several courts have held the one-year statute of limitations does not to bar an FDCPA

Case 2:15-cv-00322-SPC-MRM   Document 63   Filed 02/18/16   Page 11 of 14 PageID 841


claim where the plaintiff has alleged a discrete violation that occurred within the limitations period.  *See Calhoun v. Certegy Check Servs., Inc.*, No. 8:14-cv-1020-T-27MAP, 2014 WL 4146886, at *4 (M.D. Fla. 2014) (rejecting defendant's argument that plaintiff's FDCPA claim was time-barred because "[p]laintiff alleged discrete violations within the limitations period, notwithstanding that the original debt was incurred more than a year before filing this suit"); *McCorriston v. L.W.T., Inc.*, 536 F. Supp. 2d 1268, 1272 (M.D. Fla. 2008) (denying defendants' motion to dismiss because their act of sending a dunning letter outside the limitations period did not render the FDCPA claim time-barred because plaintiff had alleged a discrete violation within the limitations period (citations omitted)); *Kaplan v. Assetcare, Inc.*, 88 F. Supp.2d 1355, 1360 (S.D. Fla. 2000) (stating the court may assert jurisdiction and allow the case to go forward based only on the communications that fall within the statutorily permitted period).  The Court agrees with this far more persuasive body of authority.  In this case, therefore, because Plaintiff has alleged several discrete violations within the limitations period, the Court will not render the entire FCCPA to be time-barred.[4]  In other words, the clock began to run on the date of each violation, and not from the date of the first violation.  To hold otherwise would essentially allow defendant debt collectors to violate the FCCPA with impunity provided the first unlawful communication occurred outside the limitations period.  This, clearly, was not Congress's intent.

---

[4] Plaintiff also cites to case law in which courts have discussed the "continuing violation theory" applying in the context of debt collection cases.  (Doc. #39 at 11-13).  In doing so, he seems to allude that the entire period for the harassing calls, *i.e.*, April 2010 to May 2015, is relevant to the determination of whether RoundPoint violated the FCCPA.  This Court, however, need not addressing the "continuing violation theory" in the context of the FCCPA given that Plaintiff has agreed not to seek damages for any alleged violations predating May 28, 2013.  (Doc. #39 at 16).

Finally, because the statute of limitations proscribes Plaintiff's claims that predate May 28, 2013, RoundPoint argues that Plaintiff's allegations under § 559.72(18), which prohibits any communication with a debtor if the person knows that the debtor is represented by an attorney with respect to the debt, are likewise barred given counsel withdrew from representation prior to May 28, 2013.  (Doc. #38 at 3-4); *see* Fla. Stat. § 559.72(18).  Plaintiff agrees and withdraws that claim.  (Doc. #39 at 16).

### 2.  *Statutory Damages*

Under the FCCPA, "[a]ny person who fails to comply with any provision of § 559.72 is liable for actual damages and for additional statutory damages as the court may allow, but not exceeding $1,000, together with court costs and reasonable attorney's fees incurred by the plaintiff."  Fla. Stat. § 559.77(2).  Here, Plaintiff contends each act prohibited by the FCCPA that RoundPoint committed is a separate action for which he may recover damages:

> 60.   . . . Each act or omission prohibited by the FCCPA is a separate action/count by Plaintiff against RoundPoint under this Complaint for a violation of the FCCPA for which Plaintiff seeks recovery.
>
> 61.   Each of the communications (phone calls) reference in paragraph 60 above constitutes a separate and distinct action/count in this Complaint.  Plaintiff if entitled to and requests damages under the FCCPA *per* each individual action/count and seeks an adjudication for actual and statutory damages for each action/count.

(Doc. #37 at ¶¶ 60-61).   In response, RoundPoint argues that the FCCPA prohibits Plaintiff from recovering $1,000 per violation, which means Plaintiff may only recover a total of $1,000.  (Doc. #38 at 6-10).

Although the Eleventh Circuit has not expressly addressed the FCCPA's statutory damages provisions, several Florida courts have interpreted its language to limit a

plaintiff's claim for damages to $1,000 per action, not per violation.  *See Arianas v. LVNV Funding LLC*, 54 F. Supp. 3d 1308, 1310 (M.D. Fla. 2014) (stating courts "have either expressly stated that the FCCPA limits statutory damages to $1,000 per action or awarded plaintiffs no more than $1,000 per action, even when a series of FCCPA violations exist" (citations omitted)); *Salvatore v. Nationstar Mortg., LLC*, No. 8:15-cv-1390-T-24AEP, 2015 WL 5970707, at *4 (M.D. Fla. Oct. 13, 2015) ("In the event [p]laintiff alleges and proves more than one violation of the FCCPA, [p]laintiff is limited to a total statutory award of $1,000 in this action for violations of the FCCPA[.]"); *Tacoronte v. Tate & Kirlin Assoc's.*, No. 6:13-cv-331-Orl-37DAB, 2013 WL 5970720, at *2 (M.D. Fla. Nov. 8, 2013) (stating "courts properly decline to multiply the $1,000 statutory award by each violation alleged in a single count under the FCCPA").

To counter this authority, Plaintiff directs the Court's attention to *Morser v. Hyundai Capital Am., Inc.*, No. 2:15-cv-117-FTM-29CM, 2015 WL 4527016 (M.D. Fla. July 27, 2015) in which the court stated, "Florida courts are not in agreement that an FCCPA plaintiff cannot recover $1,000 in statutory damages per violation."  *Id.* at *2 (citation omitted).  *Morser*, however, is distinguishable from this case.  Unlike Plaintiff here, the plaintiff in *Morser* sought actual and statutory damages in a general fashion, despite pleading multiple FCCPA violations.  *Id.*  In other words, the plaintiff did not specifically seek the maximum $1,000 in statutory damages per violation.  The district court also did not address the issue of statutory damages at the motion to dismiss stage.  Rather, it stated, "[s]hould [the plaintiff] successfully proves multiple FCCPA violations, the proper measure of his statutory damages will be determined at that time.  However, as currently pled, [the plaintiff's] requested relief is not foreclosed as a matter of law."  *Id.*

Accordingly, the Court grants RoundPoint's motion to dismiss to the extent that Plaintiff is limited to statutory damages not to exceed $1,000 in this action for any and all violations of the FCCPA.

Accordingly, it is now

**ORDERED:**

Defendants' Partial Motion to Dismiss with Prejudice (Doc. #38) is **GRANTED in part and DENIED in part**.  The motion is granted to the extent set forth herein and otherwise denied.

**DONE** and **ORDERED** in Fort Myers, Florida this 18th day of February, 2016.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  All Parties of Record