UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

| | |
|---|---|
| LARRY HARRINGTON, )<br>     Plaintiff, )<br>-vs- )<br>ROUNDPOINT MORTGAGE SERVICING )<br>CORPORATION, and MULTIBANK 2010-1 )<br>SFR VENTURE, LLC, )<br>     Defendants. ) | CASE NO. 2:15-cv-322-SPC-MRM |

### DEFENDANTS' *AMENDED*[1] MOTION TO EXCLUDE EXPERT WITNESS TESTIMONY OF RANDALL SNYDER

Defendants, RoundPoint Mortgage Servicing Corporation ("RoundPoint") and Multibank 2010-1 SFR Venture, LLC ("Multibank") (collectively, "Defendants"), by and through their undersigned counsel, file this *Amended* Motion to Exclude the Expert Witness Testimony of Randall Snyder ("Motion") designated on behalf of Plaintiff, Larry Harrington ("Plaintiff"), and in support, state as follows:

### I.  INTRODUCTION

**A.**  **Background.**

Multibank owned Plaintiff's mortgage loan prior to a foreclosure that occurred in 2015. RoundPoint is the mortgage loan servicer for Multibank. The evidence in this case reflects that Plaintiff and his family provided the cell phone number at issue in this case on at least ***three*** different occasions as a contact number for RoundPoint to call in connection with servicing Plaintiff's mortgage loan. Despite this, Plaintiff sued Defendants under the Telephone Consumer Protection Act (the "TCPA") for allegedly calling his cell phone without his consent. *See generally* Pl.'s Second Am. Compl. ("Amended Complaint") [ECF No. 81]. As part of his case

---

[1] Amended to revise the Certificate of Conference under Local Rule 3.01(g). Counsel for Defendants has reached out to counsel for Plaintiff to establish whether he will agree to any of the relief sought in this Motion. In the event of any agreement, Defendants will supplement the Motion promptly with a statement certifying whether or to what extent the parties have resolved the issues presented in the Motion.

in chief, Plaintiff must prove that RoundPoint used an "automatic telephone dialing system." 47 U.S.C. § 227(a). An automatic telephone dialing system ("ATDS") means equipment which has the capacity (a) to store or produce telephone numbers to be called, using a random or sequential number generator; and (b) to dial such numbers. *Id*. Since at least as far back as 2003, the federal agency charged with interpreting the TCPA, the Federal Communications Commission (the "FCC"), has defined an ATDS as equipment which has the capacity to do all of these things ***without human intervention***. *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 F.C.C. Rcd. 559, 566 (2008) (emphasis added). *See also* Supp. Decl. of Pl.'s Expert, Randall Snyder[2] ("Snyder Decl.") at ¶ 8.

Therefore, in order for RoundPoint to have violated the TCPA, the telephone system at issue must (a) be an ATDS and (b) operate without human intervention. *See id; see also McKenna v. WhisperText*, 2015 WL 428728, at *3 (N.D. Cal. Jan. 30, 2015) (although telephone system could otherwise qualify as an ATDS, it was not an ATDS because it required human intervention); *Luna v. Shac, LLC*, 122 F.Supp.3d 936, 941 (N.D. Cal. 2015), *appeal dismissed* (Nov. 20, 2015) (same).

**B.      The Proffered Expert Witness Testimony.**

Plaintiff has submitted an initial and an amended declaration from Randall Snyder, whom Plaintiff holds out as an expert witness on ATDS. *See generally* Snyder Decl. In his Declaration, Mr. Snyder purports to conclude that:

> Based on my knowledge, education, experience, expertise, training, my review of the relevant documents and the facts described above, it is my opinion that the Defendants utilize an ATDS as defined within the TCPA. Furthermore, it is my opinion that the Defendants called the Plaintiff's cellular telephone number using an ATDS.

---

[2] The Supplemental Declaration of Randall Snyder, Plaintiff's designated expert, is attached hereto as **Exhibit 1**.

Snyder Decl. at ¶ 37.

Mr. Snyder also declares that RoundPoint's telephony equipment "… is equipment which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, or from a list or database of numbers, and to dial such numbers *without human intervention*." Snyder Decl. at ¶¶ 35-36 (emphasis added). On December 1, 2016, Defendants conducted the deposition of Mr. Snyder.[3] Although, Mr. Snyder purports to incorporate several pieces of evidence into his legal conclusion in the Declaration that RoundPoint used an ATDS, he disclaimed nearly all of this evidence during his deposition. *See* Snyder Tr. at 103:20-25; 104:1-25; 105:1-6.

The purported expert witness opinions offered by Mr. Snyder should be excluded for two independent reasons. First, his testimony concerning the telephone systems used by RoundPoint in this case constitutes impermissible legal conclusions. Second, his testimony is not based on sufficient data because in rendering his opinions, he did not incorporate data on how RoundPoint actually used its telephone systems to make calls.

## II.     MEMORANDUM OF LAW

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony. *See* Fed. R. Evid. 702. In applying Rule 702, "district courts must act as 'gatekeepers' which admit expert testimony only if it is both reliable and relevant." *Legg v. Voice Media Group, Inc.*, 2014 WL 1767097 at *1 (S.D. Fla. May 2, 2014) (citations omitted). Conversely, the Court should exclude expert testimony that is "speculative" or "unreliable." *Id*.

Notably, the party offering the expert has the burden of satisfying each of these three elements by a preponderance of the evidence. *Id*. (citations omitted). As set forth below, the

---

[3] A certified copy of Mr. Snyder's deposition transcript ("Snyder Tr.") is attached as **Exhibit 2**.

testimony Plaintiff offers by his "expert," Randall Snyder, is rife with legal conclusions and speculation and therefore, it should be excluded.

A. **Mr. Snyder's Testimony Concerning Legal Conclusions and Application of the Law to the Facts Should be Excluded.**

   1. **Mr. Snyder's Testimony Concerning the Legal Definition of ATDS and Whether RoundPoint's Telephone Systems Meet this Definition Must be Stricken.**

As previously intimated, the TCPA statute defines ATDS as equipment which has the capacity (a) to store or produce telephone numbers to be called, using a random or sequential number generator; and (b) to dial such numbers, without human intervention. Throughout his Declaration, and at various points in his deposition, Mr. Snyder provides his interpretations of the requirements of the TCPA and various rulings and regulations issued by the FCC construing the TCPA, and he applies his interpretation of that law to the "facts" in this case to opine that the calls at issue here were made using an ATDS and without human intervention. *See, e.g*. Snyder Decl. at ¶¶ 8, 9, 27, 29, 34, 35, 37. Further, he repeatedly refers to "automatic dialing system"—which is a phrase from the definition in the statute—in his testimony (rather than "telephone system") insinuating by this careful choice of wording that the equipment he is discussing meets the legal definition of an ATDS. *Compare* 42 U.S.C. §227(a)(1) (defining "automatic telephone dialing system") *to* Snyder Decl. at ¶¶ 13-19.

These are impermissible and inadmissible legal conclusions. Mr. Snyder cannot opine as to the legal implications of the facts; this is the purview of the judge and jury. *Legg*, 2014 WL 1767097 at, *4; *see also*, *In re: Rosenberg*, 2012 WL 3870351 at *1 (Bankr. S.D. Fla. Sept. 6, 2012) (collecting decisions) ("[f]ederal courts consistently exclude expert testimony intended to inform jurors about the applicable law or to present opinions concerning the application of the law to the facts of a given case."); *Smith v. Microsoft Corp.*, 2013 WL 6497073 at *5 (S.D. Cal.

Dec. 10, 2013) ("[i]t is uncontested that Snyder is unqualified to analyze [legal authorities] and state a legal conclusion by applying the facts of this case to his interpretation of the law.")

In fact, Mr. Snyder has been admonished, and his "expert" opinion stricken, for identical behavior in at least two cases. *See Legg*, 2014 WL 1767097; *Smith*, 2013 WL 6497073. In *Legg*—a case from the Southern District of Florida—the court held that Mr. Snyder could not offer a conclusion as to the legal definition of an automatic telephone dialing system. *Legg*, 2014 WL 1767097 at *4. The court also ruled that he could not opine as to the legal implications of the defendant's systems in relation to that definition. *Id*. More specifically, the court excluded Mr. Snyder's proposed testimony that the defendant used an "automatic telephone dialing system" within the meaning of the TCPA. *Id*. This testimony was excluded by the *Legg* court because "only the [c]ourt may instruct the jury as to the state of the law." *Id*.

Mr. Snyder now attempts to make the same improper legal conclusions here. His Declaration opines that RoundPoint used an ATDS without human intervention. *See* Snyder Decl. at ¶¶ 35-36. Further, Mr. Snyder testified repeatedly at his deposition that RoundPoint uses an ATDS. *See e.g.,* Snyder Tr. at 46:20-25; 47:1-3; 104:7-25; 105:1-2; 109:19-25; 110:1-10. Mr. Snyder is neither judge nor jury in this case, and his proposed testimony—which invades the exclusive province of each—should be excluded.

    **2.**    **Mr. Snyder's Testimony Concerning Telephone Systems Used by Multibank or Calls Made by Multibank Should be Excluded.**

RoundPoint services mortgage loans on behalf of Multibank. Plaintiff seeks to hold Multibank liable for the calls alleged to have been made in this case in violation of the TCPA. *See* Am. Compl. at ¶ 54 ("The calls made by RoundPoint were made on behalf of MultiBank"). In his Declaration, Mr. Snyder states that he has been asked to opine on whether RoundPoint and Multibank (defined by Mr. Snyder as "Defendants") operated equipment which meets the

definition of ATDS. *See* Snyder Decl. at ¶ 2. Thereafter in the Declaration, Mr. Snyder concludes that "Defendants" utilized equipment that meets the definition of ATDS. *See* Snyder Decl. at ¶ 9. Aside from being an impermissible legal conclusion, there is zero evidence that Multibank made any calls in this case and as a result, it is abundantly clear that Mr. Snyder did not review any such evidence in drawing this conclusion. *See generally*, Snyder Decl. at Exs. B-C. In fact, Plaintiff does not even allege that Multibank made any calls directly. *See generally*, Am. Compl. Mr. Snyder simply is not qualified to opine on whether RoundPoint is legally liable for the alleged conduct of Multibank. *See* Snyder Decl. at Ex. A. Mr. Snyder's testimony that Multibank "made" calls in this case constitutes an impermissible legal conclusion that Multibank is liable for the alleged calls made by RoundPoint in this case. As such, this testimony should be excluded.

**B.** **Mr. Snyder's Testimony Not Based Upon Sufficient Facts or Data Should be Excluded.**

Even it were permissible for Mr. Snyder to testify regarding his interpretation of the law, and to apply that interpretation to the "facts" of this case to say that the equipment used here is an ATDS, his testimony would still have to be excluded, as he failed to consider sufficient facts or data in drawing these conclusions. Rule 702 of the Federal Rules of Civil Procedure requires that expert testimony bear an adequate relationship to its supporting data. *Hendrix v. Evenflo Co.,* 609 F.3d 1183, 1194 (11th Cir. 2010). Because Mr. Snyder's testimony fails to meet this foundational threshold, his testimony on ATDS and human intervention should be excluded.

**1.** **Mr. Snyder's Testimony Concerning RoundPoint's Alleged Use of an ATDS to Make Calls in This Case Should Be Excluded Because It Is Not Based Upon Sufficient Facts or Data.**

In *Legg*, the court found that Mr. Snyder's conclusions that the defendants in that case used an ATDS should be stricken because this conclusion lacked an adequate factual foundation.

*Legg*, 2014 WL 1767097 at *5. This was because Mr. Snyder's opinion in the *Legg* case was based primarily upon his review of a "client manual" containing instructions and descriptions for the phone system at issue in that case. *Id*. In that case, Mr. Snyder did not physically inspect the equipment at issue. *Id*. Although Mr. Snyder claimed to have reviewed "over 1000 pages of discovery ... includ[ing] hundreds of pages of emails discussing sending text messages and the legal issues contingent thereto," his declaration and testimony reflected that in fact, he did not consider these items in forming his opinions. *Id*.

Similarly, here, although Mr. Snyder had access to facts and data on how RoundPoint actually used its phone systems though RoundPoint's corporate representative's testimony, as described below, he disregarded that data in forming his opinions. *See* Snyder Tr. at 103:10-25; 104:1-21. As a result, Mr. Snyder's opinion is based solely on his review of the user manuals associated with the telephone systems used by Roundpoint. *See, e.g.,* Snyder Tr. at 105:3-6; 105:15-22; 106:11-16; 106:19-25; 107:1-6. This is clearly insufficient, as the manuals at issue describe functionality that RoundPoint did not have.

For example, RoundPoint's corporate representative testified that RoundPoint's Cisco telephone system did not have predictive dialing capabilities.[4] In fact, RoundPoint's representative testified specifically:[5]

> Q: Did the Cisco Express system in 2011 --

---

[4] This is significant because predictive dialing, by its very nature, is construed by some courts as an ATDS. On the other hand, preview dialing, again by its nature, is viewed by many courts as requiring sufficient human intervention which removes this method from the purview of the TCPA. *Strauss v. CBE Group, Inc.,* 173 F.Supp.3d 1302, 1311 (S.D. Fla. 2016) (click-to-dial preview mode required sufficient human intervention to remove equipment from definition of ATDS).

[5] A certified copy of the deposition transcript of David Hughes, RoundPoint's corporate representative, is attached as **Exhibits 3 and 4**, and shall be abbreviated as "Hughes Tr." The size of the Hughes Tr., with its exhibits, has resulted in the need to break up the document into two exhibits; the transcript itself may be found at Ex. 3, with the exhibits to same found at Ex. 4.

> A. Uh-huh.
>
> Q. -- have the ability to do predictive dialing?
>
> A. It did not.

*See* Hughes Tr. at 36:25-37:1-8.  But, Mr. Snyder disregarded this clear and unequivocal testimony:

> Q. Did you review that entire transcript? I know it was relatively lengthy, about 200 pages or so.
>
> A. Yes, I actually did read the entire transcript.
>
> Q. Okay. So you're aware that Mr. Hughes testified that RoundPoint did not have certain functionalities under the Cisco system; is that correct?
>
> A. Yes, that's correct.
>
> Q. Okay, so yet your opinion doesn't seem to take that into consideration; is that correct?
>
> A. Well, I have to consider in the factual evidence I use what is in fact factual and what is provided by, you know, corporate representatives. Certainly I would go to the technological description and the technology manuals to see what a system is capable of, right? I think it's disingenuous to say that if using the Cisco CCX system it does not have a capability to do predictive dialing, that is opposite to my opinion. It certainly does, and whether it was used or not or when it was used or was licensed or the software was there or wasn't, or any of those other issues, doesn't inform my opinion whether the system had the capability to perform that function, and it certainly does, so ***regardless of what the corporate representative stated*** was his personal opinion representing a corporation that was a defendant in a lawsuit, ***and was probably, you know, somewhat studious in how he should answer questions*** …

*See* Snyder Tr. at 103:10-25; 104:1-21 (emphasis supplied).

Thus, despite having testimony on how the telephone systems at issue in this case were actually used, Mr. Snyder actively disregarded this information.  *See id.*  In fact, Mr. Snyder made no inquiry whatsoever into whether RoundPoint had the necessary technology, equipment

- 8 -

or licenses to use the telephone systems at issue in a manner that was consistent with use as an ATDS.  *See, e.g.,* Snyder Tr. at 105:3-6; 105:15-22; 106:11-16; 106:19-25; 107:1-6.

The manuals reviewed by Mr. Snyder do not provide sufficient data for Mr. Snyder to form a specific opinion as to the capabilities of RoundPoint's telephony systems.  To begin with, nothing in these manuals delineates the equipment or licenses RoundPoint actually had in contrast to those capabilities of the phone system itself.  At least with respect to the Cisco telephone system RoundPoint used, licenses were required to enable predictive, or autodial, functionality.  *See* Cisco Unified CCX Administration Guide, Release 8.5(1) (the "Cisco Manual") attached hereto as **Exhibit 5**, at Bates Label RDPT-003759-60; 004034; and 004036.  The Cisco manual itself, reviewed by Mr. Snyder, indicates that the system had limited functionality without licenses.  *See* Cisco Manual at Bates Label 003759-60 (describing functionality with various licenses).  By his own admission, Mr. Snyder does not know whether RoundPoint had any licenses.  *See* Snyder Tr. at 103:10-25; 104:1-21.  He cannot make a determination on what functionality RoundPoint used without actually knowing what licenses it owned.

Mr. Snyder's general experience in the industry is not a substitute for experience with and knowledge of the specific equipment and circumstances at issue here.  Rule 702, Fed. R. Evid., Advisory Committee Note (2000 Am.) ("[i]f the witness is relying solely or primarily on experience, then the witness must explain *how* that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.")  Mr. Snyder does not do that here.

For the foregoing reasons, Mr. Snyder's conclusion that RoundPoint used an ATDS is "too attenuated from the underlying materials to be of use, with the gap filled only by Mr. Snyder's speculation." *Legg*, 2014 WL 1767097 at *5. As such, it must be stricken.

2. **Mr. Snyder's Testimony Declaring That RoundPoint's Telephone Systems Operated Without Human Intervention Should Be Excluded Because It Is Not Based Upon Sufficient Facts or Data.**

Mr. Snyder's testimony that RoundPoint's telephone system dialed without human intervention should also be stricken because he has not taken into account how any of the calls at issue were actually made. By contrast, the evidence supplied to him indicates that many or all of the calls made by RoundPoint required some human action. Mr. Snyder repeatedly declares and testifies that RoundPoint made calls "without human intervention." *See* Snyder Decl. at ¶¶ 35-36; Snyder Tr. at 72:19-25; 73:1-8; 79:21-25; 80:1-7; 80:10-24. Mr. Snyder acknowledged in his deposition that human intervention means "a person taking some action of some sort." Snyder Tr. at 112:21-23.

In reaching the conclusion that RoundPoint's systems operated without human intervention, Mr. Snyder again completely disregarded RoundPoint's corporate representative's deposition testimony and further, even his own definition of human intervention. For instance, RoundPoint's corporate representative testified that "[i]n Loss Mitigation they would have picked up their hardware, the desktop phone … they would have dialed the phone number of the customer and placed their call. And then they would have entered notes into the system of record." *See* Hughes Tr. at 11:9-13. He also testified that "[i]n preview mode the representative will see our customer's loan number and what campaign the loan number has populated and then they have the option to either make the phone call or not." Hughes Tr. at 54:21-24. Clearly, this qualifies as "a person taking an action of some sort" and should remove some or all of the calls

alleged in this case from the purview of the TCPA. In fact, Mr. Snyder acknowledged that he does not know how any of the calls in this case were actually made. *See* Snyder Tr. at 86:25-87:1-5. Nor does he know whether any such calls were made manually (i.e. by dialing the phone). *See* Snyder Tr. at 86:11-17 ("I did not opine on … how many times was he called with this machine or that machine, was he called manually or automatically.") Yet, Mr. Snyder miraculously declares that RoundPoint's telephone calls were made without human intervention. *See* Snyder Decl. at ¶¶ 35-36. Because Mr. Snyder has no foundation to support his conclusion that the calls at issue in this case were made without human intervention, such testimony must be excluded. *See Legg*, 2014 WL 1767097 at, *5.

    **3.**    **Mr. Snyder's Testimony That the 5307 Number Was Called Should Be Excluded Because It Is Not Based Upon Sufficient Facts or Data.**

Again, Mr. Snyder's testimony must be stricken because his conclusions lack an adequate factual foundation. In his Declaration, Mr. Snyder states that "it is my opinion that the Defendants called the Plaintiff's cellular telephone number using an ATDS." Snyder Decl. at ¶ 37. Apparently recognizing that he did not have sufficient information to make this conclusion, Mr. Snyder attempted to disclaim this statement in his deposition:

> Q. Okay, but isn't part of your opinion stating that Mr. Harrington's cellphone was called?
>
> A. I don't believe so …

Snyder Tr. at 85:8-16. He further stated:

> A. … I did not opine on how many times, you know, the plaintiff was called, was he called in multiple different ways, you know, how many methods were used, how many times was he called with this machine or that machine, was he called manually or automatically. I wasn't asked to opine on any of those issues.

Snyder Tr. at 86:11-17.

At best, the only evidence upon which Mr. Snyder could have relied in making his statement that Defendants called the 5307 Number using an ATDS is "deposition testimony of the corporate witness stating that the plaintiff's number was actually entered into the system to be called." Snyder Tr. at 86:7-9. This then led Mr. Snyder to the conclusion that "plaintiff's telephone number was entered into at least one of these automatic dialing systems." Snyder Tr. at 86:17-24. This is, at best, unhelpful. *See Legg*, 2014 WL 1767097 ("[a]n average juror could…comprehend the significance of records illustrating that Legg received messages from VMG…Snyder's testimony on this point is therefore of minimal utility to the factfinder.") As such, Mr. Snyder's testimony on whether, or how many times, the 5307 Number was called, must be excluded because it is based on speculation, and not upon sufficient facts or data.

### III.   CONCLUSION

Plaintiff's "expert" cannot provide the Court with the legal definition of an element of Plaintiff's case, *i.e.*, what constitutes an ATDS. He also cannot make the determination that RoundPoint (or Multibank) used a telephone system that meets his legal definition. These areas are the exclusive province of the Court in this case, as it remains the trier of fact. For that reason, Mr. Snyder's testimony must be excluded. However, even if Mr. Snyder could opine on these points, his testimony is not based upon sufficient facts or data because he only reviewed a telephone manual without any inquiry into whether RoundPoint had certain required licenses or how they actually used the telephone system. Mr. Snyder had much of this evidence, but chose to ignore it because, in his words, RoundPoint's corporate representative was "studious in how he should answer questions." Snyder Tr. at 104:1-21. Instead, Mr. Snyder stubbornly opined that RoundPoint used an ATDS without human intervention. Even the telephone manuals Mr. Snyder claims to have reviewed indicate that certain licenses were necessary to use the system as

a predictive dialer. At best, Mr. Snyder's opinions are not based upon sufficient facts or data. At worst, Mr. Snyder actively ignored facts and evidence that was contrary to the opinion he was hired to provide. For these reasons, Mr. Snyder's expert testimony should be excluded or otherwise limited in this case.

*Wherefore*, Defendants, RoundPoint and Multibank, respectfully request that this Court enter an order granting their Motion to Exclude the Expert Witness Testimony of Randall Snyder, exclude or otherwise limit the testimony allowed to be submitted by Mr. Snyder in any trial of this matter as outlined herein, and for any further relief this Court deems just and appropriate.

### CERTIFICATE OF GOOD FAITH CONFERENCE PURSUANT TO LOCAL RULE 3.01

Pursuant to Local Rule 3.01(g), the undersigned counsel certifies that she has recently conferred with counsel for the Plaintiff via email regarding the relief requested herein. Due to an internal miscommunication, this conference was not conducted in advance of the filing of the Motion. Counsel for the plaintiff has not yet responded with his position. Upon receiving a response from Plaintiff's counsel, Defendants will supplement this certification promptly with a statement certifying whether or to what extent the parties have resolved the issues presented in the Motion.

.

[*Signature Block Follows*]

- 14 -

| | |
|---|---|
| Dated: February 8, 2017 | **BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC** <br> SunTrust Center <br> 200 South Orange Ave. <br> PO Box 1549 <br> Orlando, FL  32802-1549 <br> Telephone:  (407) 422-6600 <br> Facsimile:   (407) 841-0325 <br> *Counsel for Multibank and RoundPoint* <br><br> By: */s/ Angelica M. Fiorentino* <br>     Angelica M. Fiorentino <br>     Florida Bar Number: 85886 <br>     *afiorentino@bakerdonelson.com* <br>     *wirvin@bakerdonelson.com* <br>     Eve A. Cann <br>     Florida Bar Number: 40808 <br>     *ecann@bakerdonelson.com* <br>     *mymarks@bakerdonelson.com* <br>     *OLS-eService@bakerdonelson.com* |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 8, 2017, I electronically filed the forgoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following:

| | |
|---|---|
| Chris R. Miltenberger, Esquire <br> Law Office of Chris R. Miltenberger, PLLC <br> 1340 N. White Chapel, Suite 100 <br> Southlake, TX  76092-4322 <br> *chris@crmlawpractice.com* | Brandon J. Hill, Esquire <br> Wenzel Fenton Cabassa, P.A. <br> 1110 North Florida Avenue, Suite 300 <br> Tampa, FL  33602 <br> *bhill@wfclaw.com* |

                                                                                                              */s/ Angelica M. Fiorentino*
                                                                                                              Angelica M. Fiorentino