UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

LARRY HARRINGTON,            )
                Plaintiff,   )
-vs-                          )
ROUNDPOINT MORTGAGE SERVICING )  CASE NO. 2:15-cv-322-SPC-MRM
CORPORATION, and MULTIBANK 2010-1 )
SFR VENTURE, LLC,             )
                Defendants.  )

**DEFENDANTS' MOTION TO STRIKE PORTIONS OF
DECLARATIONS AND ATTACHMENTS FILED BY PLAINTIFF IN
SUPPORT OF RESPONSE IN OPPOSITION TO SUMMARY JUDGMENT**

Defendants, RoundPoint Mortgage Servicing Corporation ("RoundPoint") and Multibank 2010-1 SFR Venture, LLC ("Multibank") (collectively, "Defendants"), by and through their undersigned counsel and Pursuant to Rule 56(e) of the Federal Rules of Civil Procedure, file this Motion (the "Motion") to Strike Portions of Declarations and filed by Plaintiff in Support of the Response in Opposition to Summary Judgment [ECF No. 120] (the "Response") and in support thereof, state as follows:

### I.    BACKGROUND

Multibank owned Plaintiff's mortgage loan prior to a foreclosure that was completed in 2015. RoundPoint is the mortgage loan servicer for Multibank. Plaintiff sued Defendants under the Telephone Consumer Protection Act (the "TCPA") for allegedly calling his cell phone without his consent. *See* Pl.'s Second Am. Compl. ("Amended Complaint" or "Compl.") at Count I [ECF No. 81]. Plaintiff also sued RoundPoint under the Florida Consumer Collection Practices Act (the "FCCPA") for making calls which he alleges were "harassing." *See* Am. Compl. at Count II.

Regarding the TCPA claims, despite Plaintiff's claims that he never consented to calls to his cell phone (the "5307 Number") in his Amended Complaint, the evidence in this case reflects

that Plaintiff and his family provided the 5307 Number at issue in this case on at least *three* different occasions. *See* Defendants' Motion for Summary Judgment at ¶¶ 3, 12, and 15 [ECF No. 111] (the "Motion for Summary Judgment"). Notably for purposes of this Motion, Plaintiff provided the 5307 Number in a Construction Agreement which detailed the funds he would receive from his lender, and separately, Plaintiff's daughter, Jamie Harrington, provided the 5307 Number during a telephone call to RoundPoint that took place on June 2, 2011. Jamie Harrington claimed during this call that she was Lori Harrington, Plaintiff's wife and a borrower on the mortgage loan. *See* Motion for Summary Judgment ¶¶ 3-7; 15-17. As a result of these facts, Defendants filed their Motion for Summary Judgment. Defendants' position is that each of these acts constitutes "consent" and is an absolute bar to Plaintiff's TCPA claims. *See* Motion for Summary Judgment at 9-18.

In his Response, however, Plaintiff attempts to create an issue of material fact by submitting self-serving declarations executed by himself, his family, and his counsel (collectively, the "Declarations"). Specifically, Plaintiff attempts to create a triable issue based on his opinion that he "did not authorize" Jamie or Lori Harrington to call RoundPoint or to offer the 5307 Number on June 2, 2011. *See* Larry Decl. (defined below) at ¶ 12. He and his family also attempt to create a triable issue of fact on the number of calls made by RoundPoint. *See* Larry Decl. at ¶¶ 16-21; Lori Decl. (defined below) at ¶¶ 6-8; and Jamie Decl. (defined below) at ¶ 5. However, Plaintiff's Declarations are rife with self-serving, uncorroborated, conflicting statements and legal conclusions. As such, this Court should strike the Declarations.

For liability to be found under the FCCPA, Plaintiff must prove that the calls at issue were harassing. Case law in this jurisdiction reflects that the number of calls alone do not make the calls "harassing." *See, e.g., Lardner v. Diversified Consultants Inc.*, 17 F.Supp.3d 1215 (S.D.

Fla. 2014) (collecting cases). Instead, the calls must "continue after all such information has been communicated and reasonable efforts at persuasion and negotiation have failed." *Id.*; *see also* Motion for Summary Judgment at 20-21. Again, Plaintiff attempts to engineer an issue of material fact by submitting his personal opinion in his Declaration that negotiations had failed. *See* Larry Decl. (defined below) at ¶¶ 9, 14. Plaintiff's legal conclusions are inadmissible and should be stricken.

### A.     The Testimony at Issue.

Plaintiff submits four Declarations in support of his Response to RoundPoint's Motion for Summary Judgment. The first declaration is by Larry Harrington, the Plaintiff in this case.[1] Notably, Plaintiff claims that the Construction Agreement in which he provided the 5307 Number does not reflect the funds he received to build his home. Larry Decl. at ¶ 7. As set forth below, this is in direct contravention to his deposition testimony given on November 16, 2016.[2] *See* Larry Tr. at 57:18-22. Because it is in direct opposition to his testimony, this portion of his Declaration should be stricken. *Santhuff v. Seitz*, 385 Fed. Appx. 939, 944 (11th Cir. 2010) (disregarding affidavit as a "sham" where it conflicted with deposition testimony); *see also Yeager v. Bowlin,* 693 F.3d 1076, 1080 (9th Cir. 2012) (disregarding declaration where declarant suddenly remembered salient facts he could not remember during deposition and provided no explanation).[3]

---

[1] A copy of Plaintiff, Larry Harrington's Declaration ("Larry Decl.") is attached hereto as **Exhibit 1**.
[2] A copy of Plaintiff's deposition transcript ("Larry Tr.") is attached hereto as **Exhibit 2**.
[3] In his response to this Motion, Plaintiff will likely point the Court to *Kilgore v. Trussville Dev., LLC*, 646 Fed. Appx. 765, 772 (11th Cir. 2016) on the issue of whether the Declarations truly conflict with other evidence and testimony. *Kilgore* is distinguishable from the matter at hand, however, for at least three reasons: (1) the case involved a potential discrepancy between an *unsworn* declaration and a later affidavit; (2) the documents in question were produced by a *pro se* litigant; and (3) the *pro se* declarant never claimed any memory loss. *Id*.

Plaintiff also claims in his Declaration that his daughter, Jamie Harrington, did not have authority to provide the 5307 Number to RoundPoint. Larry Decl. at ¶ 12. This self-serving legal conclusion is in direct contravention to the clear and unequivocal evidence produced in this case that Jamie *did* have authority to provide this number. *See, e.g.,* Plaintiff's Response at ¶¶ 18, 20 (alleging that the 5307 Number belonged to Jamie); *see also* Transcript of June 2, 2011 Call in which Jamie claims to be Lori, a borrower on the loan.[4] Because these statements are in direct contravention to other direct, quantifiable evidence, and because they constitute impermissible legal conclusions, they should be stricken. *Ojeda v. Louisville Ladder Inc.*, 410 Fed. Appx. 213, 215 (11th Cir. 2010).

The second declaration submitted by Plaintiff is by his wife and the co-borrower on the mortgage loan, Lori Harrington.[5] In her Declaration, Lori Harrington claims that she received more calls than RoundPoint's business records reflect, and that RoundPoint called additional cell phone numbers not reflected in RoundPoint's business records. *See* Lori Decl. at ¶¶ 6-8, 10-13). Similarly, Jamie Harrington also claims that her cell phone, which she does not identify, received calls from RoundPoint, and that those calls are not reflected in RoundPoint's business records.[6] *See* Jamie Decl. at ¶ 5. These unsupported, self-serving allegations, like those made by Plaintiff, were clearly manufactured in an attempt to create a genuine issue of material fact in this case, as they are completely uncorroborated. This is not admissible evidence. *See Smith v. HCA Inc.*, 2005 WL 1866395 at, *3 (M.D. Fla. July 26, 2005) (*citing Earley v. Champion International Corp.*, 907 F.2d 1077, 1081 (11th Cir.1990) ("Conclusory, self serving, or uncorroborated allegations in an affidavit or deposition will not create an issue of fact for trial

---

[4] The Transcript of the June 2, 2011 call to Roundpoint ("Call Transcript") is attached to RoundPoint's Motion for Summary Judgment, and for ease of reference is attached hereto as **Exhibit 3**.
[5] A copy of Lori Harrington's Declaration ("Lori Decl.") is attached hereto as **Exhibit 4**.
[6] A copy of Jamie Harrington's Declaration ("Jamie Decl.") is attached hereto as **Exhibit 5**.

sufficient to defeat a well supported summary judgment or directed verdict"); *see also Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000) ("This court has consistently held that conclusory allegations without specific supporting facts have no probative value.")

Further, although Lori Harrington states that Jamie Harrington was authorized to contact RoundPoint on behalf of both her and her husband, she argues Jamie Harrington was not authorized to give out the 5307 Number. Lori Decl. at ¶ 9. Jamie Harrington also claims, in almost the exact same words as Lori Harrington, that her mother asked her to call RoundPoint, but that she did not provide her with the 5307 Number or ask her to give this number to Roundpoint. Jamie Decl. at ¶ 3. Yet, these statements are in direct conflict with prior testimony given by Lori and Jamie on November 16, 2016 and November 17, 2016, respectively, in which they claimed they could not remember anything about the circumstances surrounding the call or the call itself.[7] Jamie Tr. at 37:25; 38:1-24; *see also* Lori Tr. at 39:1-4. Because Lori and Jamie Harrington provide no explanation for their sudden recollection of details, these statements in the Declarations should be stricken.

Finally, in an usual effort to defeat summary judgment, Plaintiff submits an affidavit by his counsel purporting to summarize and explain records allegedly produced by RoundPoint.[8] *See* Miltenberger Decl. at D1-D12; *see also* Larry Decl. at A-3. Because, among other reasons,

---

[7] A certified copy of the transcript of Lori Harrington's deposition ("Lori Tr.") is attached as **Exhibit 6**, and a certified copy of the transcript of Jamie Harrington's deposition ("Jamie Tr.") is attached as **Exhibit 7**.

[8] A copy of the Declaration of Chris Miltenberger, along with its exhibits ("Miltenberger Decl."), is attached hereto as **Exhibit 8**.

Plaintiff and his counsel do not have the personal knowledge necessary to admit or explain these records, these portions of the Declarations and their accompanying exhibits must be stricken.[9]

## II. MEMORANDUM OF LAW

The requirements for affidavits and declarations offered in support of or in opposition to summary judgment are outlined in Rule 56(c)(4), Fed. R. Civ. P. That rule requires that an affidavit or declaration be based "on personal knowledge, set out facts that would be admissible in evidence, and show that the ... declarant is competent to testify on matters stated." Fed. R. Civ. P. 56(c)(4). Further, as this Court had found, "conclusory, self-serving, or uncorroborated allegations in an affidavit or deposition will not create an issue of fact for trial sufficient to defeat a well-supported summary judgment or directed verdict." *Smith*, 2005 WL 1866395 at, *3 (*citing Early v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990)) Such statements are inadmissible because they have no probative value. *Leigh*, 212 F.3d at 1217. "When an affidavit submitted in support of, or opposition to, a motion for summary judgment contains inadmissible evidence, the court may strike the inadmissible portions of the affidavit and consider the rest." *Story v. Sunshine Foliage World, Inc.*, 120 F.Supp.2d 1027,

---

[9] For purposes of clarity, Defendants propose to strike the following evidence submitted by Plaintiff for the reasons noted:

    A.    Larry Decl. at ¶¶ 3, 7, 22 (contrary to prior testimony or allegations and other overwhelming evidence, *i.e.* the Call Transcript); ¶¶ 9, 12, 14 (legal conclusions); ¶¶ 16-21 (self-serving and contrary to overwhelming documentary evidence); ¶¶ 11, 15 and Exs. A-1 and A-2 (unauthenticated, no personal knowledge, not qualified to interpret, hearsay, irrelevant/prejudicial).

    B.    Lori Decl. at ¶¶ 6-8, 10-13 (self-serving and contrary to overwhelming documentary evidence); ¶ 4 (contrary to prior testimony).

    C.    Jamie Decl. at ¶¶ 3-4 (contrary to prior testimony); ¶ 5 (self-serving and contrary to overwhelming documentary evidence).

    D.    Miltenberger Decl. at ¶¶ 3-6 and related Exs. D-1 through D-12 (unauthenticated, no personal knowledge, not qualified to interpret, hearsay, irrelevant/prejudicial).

1031 (M.D. Fla. 2000). "An affidavit must be stricken when it is a conclusory argument rather than a statement of fact, or when the affidavit is not based on personal knowledge." *Id*.

Here, portions of Plaintiff's Declarations and exhibits are inadmissible because (1) the declarant lacks personal knowledge, or (2) the statements are (a) legal conclusions, (b) self-serving, (c) contrary to prior deposition testimony given by the respective declarant, and/or (d) contrary to the overwhelming tangible evidence. These statements and exhibits were clearly designed solely to generate an issue of material fact, and as such, they should be stricken. *See id*.

A. **Plaintiff and His Family's Conclusory, Self-Serving Testimony Denying Jamie's Authority to Provide the 5307 Number Should Be Stricken Because These Statements Are Unsupported and Provided Solely with the Purpose of Creating a Genuine Issue of Material Fact for Trial.**

As previously indicated, RoundPoint and Multibank have submitted evidence they believe establishes legal "consent" under the TCPA. *See* Motion for Summary Judgment at 9-18. Plaintiff attempts to defeat summary judgment by offering his own conclusory statements that Jamie Harrington did not have consent to provide the 5307 Number, despite the other clear, tangible, and verifiable evidence and testimony in this case. *Compare* Larry Decl. at ¶ 12, *with* Call Transcript *and* Lori Decl. at ¶ 9.

According to the Declarations, Jamie Harrington, called RoundPoint on June 2, 2011 and pretended to be her mother. Claims by Plaintiff and Lori Harrington that Jamie Harrington was not authorized to provide the personal information she provided during the June 2, 2011 call - including the 5307 Number - have been manufactured solely to prevent summary judgment in this case. The overwhelming evidence reflects that Jamie Harrington *did* have permission to call from Lori Harrington, who is a borrower on the loan, and concomitant authority to provide the information necessary to achieve her purpose in making the call. *See* Lori Decl. at ¶ 9. And further, Jamie *did* have the personal identifying information necessary to prove her authority to

RoundPoint, including both Larry's and Lori's social security numbers. *See* Call Transcript at 2-3. Plaintiff cannot present his own conclusory statements and legal conclusions where the evidence is otherwise clear. *Smith*, 2005 WL 1866395 at, *3; *see also Vinewood Capital, LLC v. Dar Al-Maal Al-Islami Trust*, 541 Fed. Appx. 443, 447 (5th Cir. 2013) ("A party's uncorroborated self-serving testimony cannot prevent summary judgment, particularly if the overwhelming documentary evidence supports the opposite scenario."). As such, the court should strike these statements. *See id*.

Finally, Plaintiff's allegations in the Declaration that Jamie did not have authority to provide the 5307 Number are contrary to his admission in his deposition that the whole family shared cell phones. *See* Larry Tr. at 15:11-15 ("Well, we had four phones, but anybody was allowed to use them…") If Jamie Harrington was using the 5307 Number, she had authority to give it out. *McCaskill v. Navient Sols., Inc.,* 178 F.Supp.3d 1281, 1290 (M.D. Fla. 2016) (non-subscriber customary user of a telephone number has authority to give out telephone number).

Although Plaintiff may try to claim that Jamie and Lori Harrington's Declarations support that Jamie did not have authority to provide the 5307 Number, any such claim is in direct contradiction to both Lori and Jamie Harrington's deposition testimony, at which each stated that they could not remember anything about the circumstances surrounding the June 2, 2011 call (Jamie) or the substance of the call (Jamie and Lori). Jamie Tr. at 37:25; 38:1-24; Lori Tr. at 39:1-4. As such Plaintiff and his family's conclusory, self-serving and unsupported statements in the Declarations must be stricken. *See Smith*, 2005 WL 1866395 at *3; *Vinewood Capital,* 541 Fed. Appx. at 447.

**B.     Plaintiff's Legal Conclusions in His Declaration Should Be Stricken.**

Legal conclusions are impermissible as evidence. *See Ojeda*, 410 Fed. Appx. at 215 (citing *Avirgan v. Hull,* 932 F.2d 1572, 1577 (11th Cir. 1991)); *also see Leigh*, 212 F.3d at 1217 (conclusions in affidavits have no probative value). As such, they cannot be used to defeat summary judgment. *Id*. ("A nonmoving party may not defeat summary judgment by 'simply relying on legal conclusions or evidence which would be inadmissible at trial. The evidence presented cannot consist of conclusory allegations or legal conclusions.'")

   **1.     Plaintiff's Legal Conclusion in His Declaration That Jamie Harrington was "Not Authorized" to Provide the 5307 Number Should Be Stricken.**

Even if Plaintiff's statements in his Declaration stating that Jamie Harrington was not "authorized" to give out the 5307 Number are not stricken in light of other unequivocal evidence and claims, this statement should be stricken as an impermissible legal conclusion. *Ojeda*, 410 Fed. Appx. at 215. Whether Jamie Harrington was authorized to provide the 5307 Number is for the Court to decide based upon, among other things, the fact that she had the permission of co-borrower, Lori Harrington, to make the call, and that she had personal identifying information of both of her parents as set forth in the transcript of the June 2, 2011 recorded call. *See* Lori Decl. at ¶ 9; Call Transcript.

   **2.     Plaintiff's Legal Conclusion in His Declaration That "All Reasonable Efforts at Negotiation Had Failed" Should Be Stricken.**

For liability to be found under the FCCPA, Plaintiff must prove that the calls at issue were harassing. Case law in this jurisdiction reflects that the number of calls alone do not make the calls "harassing." *See, e.g., Lardner v. Diversified Consultants Inc.*, 17 F.Supp.3d 1215 (S.D. Fla. 2014) (collecting cases). Instead, the calls must "continue after all such information has been communicated and reasonable efforts at persuasion and negotiation have failed." *Id.*; *see*

*also* Motion for Summary Judgment at 20-21. On this point, Plaintiff summarily declares his belief that "all efforts at reasonable negotiation had failed." Larry Decl. at ¶¶ 9, 14. Not only is Plaintiff's personal opinion on whether efforts at negotiation had failed irrelevant, it is also an impermissible legal conclusion. *Ojeda*, 410 Fed. Appx. at 215 ("Evidence presented [in opposition to summary judgment] cannot consist of conclusory allegations or legal conclusions"). Instead, the Court is to make this determination. Plaintiff interposes his personal opinion on this point only to prevent summary judgment in light of the unequivocal case law, which demonstrates that where there is no negotiation, there can be no violation. *See Lardner, supra.* Plaintiff's opinion on this point is an impermissible legal conclusion and should be stricken. *See*, *Ojeda,* 410 Fed. Appx. at 215.

C. **Plaintiff's Conflicting, Self-Serving, and Uncorroborated Declarations Should Be Stricken.**

   1. **Conflicting Testimony on Ownership of the 5307 Number Should be Stricken.**

Initially in his Response, Plaintiff states that the 5307 Number belonged to Jamie Harrington and that this was the number at which "she" could be reached. *See* Response at ¶¶ 18, 20. Consistent with this statement, at his deposition on November 16, 2016, Larry Harrington testified that he and his family shared cell phones. *See* Larry Tr. at 15:11-15 ("Well, we had four phones, but anybody was allowed to use them. There wasn't necessarily -- one person may have used it a little more than another person, but we all had access to them."). In his Declaration, however, Larry Harrington inexplicably declares that "[the 5307 Number] is my cellphone …" Larry Decl. at ¶ 22. Plaintiff fails to provide any explanation for this fatal inconsistency between his allegations that the 5307 Number belonged to Jamie, and his Declaration stating the 5307 Number belonged only to him. Plaintiff cannot have this both ways,

either logically or legally. Either the 5307 Number belonged to him, or it did not.[10] Since he now has claimed both points to be true, without explanation, these portions of Plaintiff's Declaration should be stricken. *Santhuff v. Seitz*, 385 Fed. Appx. 939, 944 (11th Cir. 2010) (disregarding affidavit as a "sham" where it conflicted with deposition testimony); *see also Yeager v. Bowlin,* 693 F.3d 1076, 1080 (9th Cir. 2012) (finding affidavit conflicted with deposition testimony where party previously testified he could not remember points raised in declaration).

### 2. Jamie's Conflicting Testimony on Whether She Was Authorized to Provide the 5307 Number Should Be Stricken.[11]

Jamie Harrington summarily states in her Declaration that her "[M]other, Lori, did not give [her] … [the 5307 Number] and she did not tell [her] to give [the 5307 Number] to RoundPoint." Jamie Decl. at ¶ 3. She also claims that she did not inform her father that she made this call, and that as far as she knows, he was not aware that she made the June 2, 2011 call to RoundPoint. Jamie Decl. at ¶ 4. These claims are in direct contravention to her deposition testimony at which she repeatedly confirmed that she could not remember anything that occurred prior to, during, or after the call:

*Before the call*

> Q. You don't remember if your mom asked you to pretend that you were her?
> A. In those words, no, I don't remember.
> Q. What were her words?
> A. I don't remember.
> Q. What was the gist of what she was saying?
> A. "Ask about insurance."
> Q. Was that the only instruction that she gave you?
> A. Yes.
> Q. So she didn't tell you anything else about the call?

---

[10] And if the 5307 Number *did not* belong to him, his TCPA claim against Defendants cannot stand.
[11] Because Jamie's Declaration must be stricken on these points, it also cannot be used to corroborate Plaintiff's claims that Jamie did not have authority to provide the 5307 Number as articulated in Section II. A., above.

>A. Not really. I don't remember.
>Q. Were you expecting to have to give some personal information?
>A. I guess so. I don't remember exactly.
>Q. What do you remember?
>A. That she asked me to make the call.
>Q. And that's it?
>A. Pretty much.

Jamie Tr. at 37:25; 38:1-24.

>…

>*During the Call*

>Q. And you don't remember anything about the substance of the call independent of hearing the recording?
>A. No.
>Q. It's interesting to me that you memorized the Social Security numbers pretty easily, it seems, because you told me you didn't make any effort to do that, but you don't remember a lot of details about the call. Can you explain that to me?
>A. No.

Jamie Tr. at 54:13-22.

>…

>*After the Call*

>Q. So you completed the call, and then what did you do?
>A. I don't remember.
>Q. Well, at some point you talked to your mom about it, right?
>A. I think so.
>Q. What did you say?
>A. I don't remember.
>…

Jamie Tr. at 45:23-25; 46:20-25.

>Q. Okay. Has the issue that you gave out the number in this case come up at any other time?
>A. I don't remember.
>Q. Have you had this conversation with your parents about that?
>A. About what?
>Q. About the fact that you gave out the number that's an issue in this case?
>A. I don't remember.

> Q. Well, this lawsuit has been pending for about a year and a half, so it would have been within the last year and a half.
> A. I don't remember.

Jamie Tr. at 57:6-19.

Because Jamie Harrington testified repeatedly that she could not remember the events surrounding her call to RoundPoint, her testimony about whether she was told to provide the 5307 Number, or whether she informed her father of this conversation must be stricken. *Yeager v. Bowlin,* 693 F.3d 1076, 1080 (9th Cir. 2012) (declaration in support of opposition to summary judgment stricken where witness remembered almost nothing during his deposition, but suddenly recalled those same events in his declaration without any credible explanation).

### 3. Larry's Conflicting Testimony on Whether the Construction Agreement Details Funds They Were to Receive from Their Lender Should be Stricken.

Larry Harrington states in his Declaration that the Construction Agreement attached to RoundPoint's Motion for Summary Judgment (on which he provided the 5307 Number) "does not detail the funds he and Lori were to receive from the Lender for the construction of our home ..." Larry Decl. at ¶ 7. Yet, Larry Harrington stated during his deposition that he signed the Construction Agreement too long ago to remember whether it detailed the funds he would receive to purchase his home. Larry Tr. at 57:18-22 ("Q. Could this have been an agreement detailing the funds that you were to receive? A. It could be. Q. Do you have any reason to believe that it's not? A. Again, I -- it was a long time ago.") Larry provides no explanation for his sudden recollection that in fact this document does *not* detail funds he would receive to build his home. *See* Larry Decl. at ¶ 7. Since the testimony in the Declaration is in direct contravention to his prior deposition testimony, and since he provides no explanation for his sudden recollection about this document, it should be stricken. *See Yeager,* 693 F.3d at 1080 (striking declaration where party could not remember salient facts about his case in deposition

but later recalled them with clarity in a declaration in opposition to summary judgment without any explanation).

### 4. Uncorroborated Evidence on the Number of Calls and That Other Cell Phones Were Called Should be Stricken.

Where concrete evidence establishes a material fact, this evidence cannot be defeated by self-serving, uncorroborated affidavits. *U.S. v. Stein*, 840 F.3d 1355, 1357 (11th Cir. 2016) (where IRS established taxpayer had not paid taxes through federal tax returns, transcripts of account and affidavits, this evidence could not be contradicted by self-serving affidavit by taxpayer alleging that she paid); s*ee also Smith*, 2005 WL 1866395 at *3. Larry Harrington states in his Declaration that RoundPoint called other cell phones, and further, that RoundPoint called more times than is reflected in the only concrete evidence of calls in this case – the call records produced by RoundPoint. Larry Decl. at ¶¶ 16-21. His family makes similar allegations.[12] *See* Lori Decl. at ¶¶ 6-8, 10-13; Jamie Decl. at ¶ 5. As a preliminary matter, it does not matter how many times RoundPoint called if it had legal consent. *See* 47 U.S.C. §227(a) (TCPA statute).

But even if this was a genuine issue of material fact, Plaintiff has not submitted any evidence on this point aside from his own testimony. Plaintiff produced no evidence of calls to other numbers or in excess of those reflected in RoundPoint's records. As such, the self-serving and uncorroborated statements by Plaintiff and his family must be stricken. *Id*.

### D. **Plaintiff's Declarations Concerning RoundPoint's Records Should be Stricken.**

Plaintiff's own Declaration purports to attach copies of foreclosure-related documents and documents which purport to be business records produced by RoundPoint. Larry Decl. at ¶¶

---

[12] Interestingly, Plaintiff and his family seemed to suffer from severe memory loss during their respective depositions, testifying that they could not remember crucial facts 272 times in total (with Larry stating "I don't know," "I can't recall," or some other form of such a statement 99 times, Lori making such statements 31 times, and Jamie making these statements 142 times).

11, 15, Exs. A-1-A-3. Plaintiff's counsel has also submitted his own declaration in support of records allegedly produced by RoundPoint. *See* Miltenberger Decl. at ¶¶ 4-6, Exs. D1-D12. As a preliminary matter, Plaintiff's and his counsel's testimony concerning RoundPoint's business records is irrelevant to the claims and defenses in this case. The issue on summary judgment for Plaintiff's TCPA claim is whether Plaintiff or his family consented to calls to the 5307 Number. *See* Motion for Summary Judgment at 8-19. Plaintiff's summaries and analysis of RoundPoint's records do not address the consent issue. The issues on summary judgment for Plaintiff's FCCPA claim is whether the calls at issue were made with such frequency as to be harassing, and whether they continued after reasonable efforts at negotiation and persuasion had failed. *See* Motion for Summary Judgment at 20-21. Plaintiff and his counsel's exhibits and related testimony are completely irrelevant to the issues under consideration for summary judgment in either of Plaintiff's claims. Additionally, they are prejudicial to Defendants. Therefore, they should be stricken. *See Williams v. Eckerd Family Youth Alternative*, 903 F.Supp. 1515, 1517 (M.D. Fla. 1995) ("Courts will grant such motions where the allegations have no possible relation to the controversy and may cause prejudice to one of the parties.")

Even if the exhibits and related testimony are not stricken because they are irrelevant and prejudicial, they should be excluded because they have not been properly authenticated. Neither Plaintiff nor his counsel are qualified to authenticate records from a state court foreclosure case or summaries of RoundPoint's business records. *See* Fed. R. Evid. 901, 902. Plaintiff's counsel is certainly not qualified to authenticate *summaries* of RoundPoint's business records. *Id*; *see also Dannebrog Rederi AS v. M/V TRUE DREAM,* 428 F.Supp.2d 1265, 1268 (S.D. Fla. 2005) (statements and summaries of evidence by counsel inadmissible because the evidence concerned factual events that occurred in the case and about which counsel did not have personal

knowledge); *U.S. E.E.O.C. v. SunTrust Bank*, 2014 WL 1763200, at *4 (M.D. Fla. Apr. 30, 2014) (striking counsel's summaries of testimony).

But even if these records allegedly belonging to RoundPoint could be authenticated by Plaintiff and his counsel, neither Plaintiff nor his counsel have the personal knowledge necessary to explain these records or what they imply, because they were created and maintained by RoundPoint. Further, Plaintiff and his counsel cannot provide summaries or opinions about what those summaries reflect, because neither is qualified to interpret them. *See* Miltenberger Decl. at ¶¶ 3-5 (describing calls allegedly reflected in RoundPoint's servicing notes).[13] For example, Plaintiff uses filings in his state court foreclosure proceeding to establish his opinion that "all reasonable efforts at persuasion and negotiation had failed." Larry Decl. at ¶¶ 14-15. Counsel also purports to explain what the entries in the summaries he alleges were taken from RoundPoint's records mean. *See e.g.* Miltenberger Decl. at ¶ 4.a. ("D-1 lists all of the calls RoundPoint made to Plaintiff or his family.") and Miltenberger Decl. at ¶ 4.e.-j. (allegedly listing messages left by RoundPoint). Plaintiff cannot point to a single shred of evidence other than his own conjecture that establishes these records communicate what he claims they do.[14] Further, many of the "summaries" provided by counsel contain calls made outside the statute of

---

[13] In addition, the business records and summaries are inadmissible hearsay because they are offered to prove the truth of the matter asserted - that calls were made by RoundPoint and that "reasonable efforts at persuasion had failed." *See* Larry Decl. at ¶ 9. These records do not meet any of the hearsay exceptions contained in Rule 803. Fed. R. Evid. 803; *see also U.S. v. Langford*, 647 F.3d 1309, 1327 (11th Cir. 2011) ("To satisfy Rule 803(6), ... the proponent must establish that it was the business practice of the recording entity to obtain such information from persons with personal knowledge and the business practice of the proponent to maintain the records produced by the recording entity.")

[14] For example, the wording on most of the entries allegedly reflecting that messages were left is exactly the same. *See, e.g.,* Response at Ex. D-1. It seems unlikely that every single representative typed "LEFT MESS MACHINE" to denote that a message was left. Instead, this field may have been automatically populated and it may or may not be accurate. Plaintiff's counsel has no personal knowledge of whether messages were actually left during any of these calls. Moreover, he had the chance to question RoundPoint's corporate representative about the meaning of these entries but he chose not to do so. He cannot now insert his own assessment of the meaning of these records.

limitations. *See, e.g.,* Miltenberger Decl. at ¶ 4.d. (explaining Ex. D-4). In sum, Plaintiff cannot, through these Declarations, attempt to testify as to the meaning of RoundPoint's records, and his efforts to do this are irrelevant and highly prejudicial.

Even more egregious is counsel's citation to a website purporting to interpret the meaning of "skip trace" used to show how the phrase "this is now a skip account" was used by RoundPoint in its own records.[15] Miltenberger Decl. at ¶ 6. Only RoundPoint can explain what it meant by the phrase "this is now a skip account," and in fact, it did explain this repeatedly at the deposition of its Rule 30(b)(6) witness. *See* Deposition Transcript of David Hughes, attached to Plaintiff's Response at Ex. E at 92:5-15; 174-75 (emphasis added):

> Q: Did you do any -- what do you do in a skip account?
> A: ***This loan was not skip traced***. It was simply marked as eligible for a skiptrace.
> Q: How do you know it wasn't skiptraced?
> A: Because there's no notes indicating it. We also confirmed with LexisNexus, our provider, that skiptracing had not been done on this customer.
> …
> Q: It says, "This is a skip account." And I think this is what you were just explaining but can you clarify what that means? Does that mean this went out to a third party?
> A. Oh, no, that just means it was eligible to be skiptraced. Doesn't mean it was going to be skiptraced.

This is yet another example of Plaintiff's attempt to manufacture an issue of material fact in order to preclude summary judgment. But here, Plaintiff's efforts fall short because the Declarations by Plaintiff, and his counsel, and all related exhibits, must be stricken.

---

[15] Plaintiff appears to be trying to create a material fact concerning how RoundPoint obtained the 5307 Number. This is not a material fact. The undisputed evidence reflects that Plaintiff and his family provided the 5307 Number on three occasions. *See* Motion for Summary Judgment at ¶¶ 3, 12, and 15.

### III. CONCLUSION

Plaintiff's self-serving Declarations, as included in his Response to Defendants' Motion for Summary Judgment, are at best, legal conclusions and uncorroborated statements. However, many of the statements in the Declarations flat-out contradict prior testimony during which Plaintiff and his family testified that they could not recall salient details they now claim to remember. In fact, Plaintiff and his family claimed they could not remember a whopping 272 times during their depositions. They cannot claim memory loss during depositions and now suddenly recall these same points in sworn Declarations in opposition to summary judgment. For the foregoing reasons, specific portions of Plaintiff's Declarations, as outlined herein, should be stricken. Furthermore, the Declarations and related exhibits submitted by Plaintiff and his counsel must be stricken because they are unauthenticated and inadmissible under the Federal Rules of Evidence.

*Wherefore*, Defendants, RoundPoint and Multibank, respectfully request that this Court grant their Motion to Strike Plaintiff's Declarations, enter an order striking the specific portions of the Declarations and exhibits to same submitted by Plaintiff, as attached to his Response to Defendants' Motion for Summary Judgment, and remove such statements and exhibits from consideration of the pending summary judgment motion in this case, and for any and all other relief this Honorable Court deems just and appropriate.

### CERTIFICATE OF GOOD FAITH CONFERENCE PURSUANT TO LOCAL RULE 3.01

Pursuant to Local Rule 3.01(g), the undersigned counsel certifies that she and counsel for Plaintiff have conferred during several exchanges *via* email regarding the relief requested herein. Plaintiff opposes the relief sought herein.

| | |
|---|---|
| Dated: February 13, 2017 | **BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC**<br>SunTrust Center<br>200 South Orange Ave.<br>PO Box 1549<br>Orlando, FL  32802-1549<br>Telephone:  (407) 422-6600<br>Facsimile:   (407) 841-0325<br>*Counsel for Multibank and RoundPoint*<br><br>By: */s/ Angelica M. Fiorentino*<br>    Angelica M. Fiorentino<br>    Florida Bar Number: 85886<br>    *afiorentino@bakerdonelson.com*<br>    *wirvin@bakerdonelson.com*<br>    Eve A. Cann<br>    Florida Bar Number: 40808<br>    *ecann@bakerdonelson.com*<br>    *cmp01@bakerdonelson.com*<br>    *OLS-eService@bakerdonelson.com* |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 13, 2017, I electronically filed the forgoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following:

| | |
|---|---|
| Chris R. Miltenberger, Esquire<br>Law Office of Chris R. Miltenberger, PLLC<br>1340 N. White Chapel, Suite 100<br>Southlake, TX  76092-4322<br>*chris@crmlawpractice.com* | Brandon J. Hill, Esquire<br>Wenzel Fenton Cabassa, P.A.<br>1110 North Florida Avenue, Suite 300<br>Tampa, FL  33602<br>*bhill@wfclaw.com* |

*/s/ Angelica M. Fiorentino*
Angelica M. Fiorentino