UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

LARRY HARRINGTON,

      Plaintiff,

v.                         Case No:  2:15-cv-322-FtM-38MRM

ROUNDPOINT MORTGAGE
SERVICING CORPORATION and
MULTIBANK 2010-1 SFR
VENTURE, LLC,

      Defendants.
_____/

## OPINION AND ORDER[1]

    This matter comes before the Court on review of Plaintiff Larry Harrington's Motion to Strike (Doc. 119) filed on January 23, 2017.  Defendants RoundPoint Mortgage Servicing Corporation ("RoundPoint") and Multibank 2010-1 SFR Venture, LLC ("Multibank") filed their Response in Opposition (Doc. 126) on February 6, 2017.  The Court has also reviewed the Defendants' Motion to Strike (Doc. 129) filed on February 13, 2017 and Harrington's Response in Opposition (Doc. 136) filed on February 27, 2017.  Finally, the Court has reviewed Defendants' Supplemental Motion to Strike (Doc. 137),

---

[1] Disclaimer:  Documents filed in CM/ECF may contain hyperlinks to other documents or websites.  These hyperlinks are provided only for users' convenience.  Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees.  By allowing hyperlinks to other websites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their websites.  Likewise, the Court has no agreements with any of these third parties or their websites.  The Court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

filed on March 6, 2017, to which Harrington Responded in Opposition (Doc. 138) on March 20, 2017.[2]  These matters are ripe for review.

## BACKGROUND

This case involves allegations that Defendants violated federal and state statutes by attempting to collect a debt through repeated automatically-dialed telephone calls without first obtaining consent to do so from the debtor.   On January 9, 2017 the Defendants moved for Summary Judgment against Harrington.  (Doc. 111).  Harrington Responded in Opposition.  (Doc. 120).  The instant dispute relates to dueling motions to strike filed by the parties.

## DISCUSSION

**A.      Harrington's Motion to Strike**

1.  The Propriety of the Hughes Affidavit

Harrington first argues that the entire affidavit of David Hughes ("Hughes Affidavit") (Doc. 111-2), should be stricken as a sanction for Defendants' presentation of loan history records ("Loan History") (Doc. 111-6) that he argues have been altered.   Generally, motions to strike are governed by Federal Rule of Civil Procedure 12(f), which states that a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent or scandalous matter."  Fed. R. Civ. P. 12(f).  Even so, Federal Rule of Civil Procedure 12(f) only gives the Court authority to strike *pleadings.  Id.* (emphasis added).

---

[2] The Court notes that although the Defendants' Supplemental Motion to Strike (137) in conjunction with their previous Motion to Strike (129), the subject matter concerns a matter entirely distinct from the previous Motion.  As such, the Court will treat the Supplemental Motion as a free-standing Motion.  If this were not the case, Defendants Motion (and Harrington's subsequent Response in Opposition) would, ironically, be stricken from the record as improper.

Federal Rule of Civil Procedure 7(a) states that "pleadings" consist of complaints, answers to a complaint, answers to a counterclaim, answers to a crossclaim, third-party complaints, and replies to an answer. See Fed. R. Civ. P. 7(a). Courts across the Eleventh Circuit have held that motions filed under Rule 12(f) that ask the Court to strike documents other than pleadings are improper. *See Kahama VI, LLC v. HJH, LLC*, No. 8:11–CV–2029–T–30TBM, 2014 WL 3721298, at *1 (M.D. Fla. July 28, 2014); *see also Santana v. RCSH Operations, LLC*, 10–61376–CIV, 2011 WL 690174, at *1 (S.D. Fla. Feb.18, 2011); *Croom v. Balkwall*, 672 F.Supp.2d 1280, 1285 (M.D. Fla. 2009).

Harrington argues that Defendants presented the Loan History in altered form because a reference denoting the account as a "skip account" was absent from the November 1, 2010 entry on page two (2) of the record. (Doc. 111-6 at 2). As proof, Harrington presents what his attorney, Chris R. Miltenberger declares is a true and correct copy of the Defendants' Loan History. (Doc. 119-1 at 4). In the November 1, 2010 cell, Harrington's copy states "THIS IS NOW A SKIP ACCOUNT." (Doc. 119-1 at 4).

Defendants argue that the version of the Loan History they filed was not altered, but that certain information was omitted because the original format of the document – Microsoft Excel – innocently cut off a portion of the text when the document was prepared for filing. Moreover, Defendants argue that even had the full language been produced, Harrington's emphasis on the words "skip account" are misleading, because it does not mean the account was skip traced, but rather that the account was eligible for skip tracing. Finally, Defendants argue that they did not produce the Loan History that Harrington filed, and conclude that it was likely produced by RoundPoint in unrelated litigation because it was filed with the Court in PDF format.

First, it is unclear whether Harrington's version of the Loan History comes from unrelated litigation. Defendants vehemently contend that RoundPoint maintains its business records in original Excel format, and not PDF format. From this they conclude because Harrington presented the Loan History in PDF format, the records must have come from unrelated litigation. But in the same breath, Defendants maintain that they produced a copy of the original Excel record through discovery. (Doc. 126 at 6). It is ambiguous whether Defendants mean they produced the Loan History in Excel form, or merely that they produced the records to Harrington. If the copies were presented to Harrington in Excel form, it is not a far inferential leap to conclude that Harrington could explore the full contents of the cells and to format the document to reveal the entirety of their extent.

On alteration, it is notable that Harrington does not contend that Defendants altered the *contents* of the Loan history record, but rather that the *format* simply does not present the entirety of each cell. The word "alter" invokes the idea that the document had been changed. But while the formatting of the Loan History presented by Harrington is different because the cell size has been modified, the Court sees no evidence to show that the substantive contents of Defendants' version were changed.

The Court is also not convinced that Defendants' omission prejudiced Harrington. A skip account is one in which a borrower "defaults on a loan and skips out on repayment by moving without providing a correct forwarding address."[3] But the designation as a "skip account" does not conclusively indicate that the Harringtons were skip traced. This

---

[3] Skip Account, INVESTOPEDIA, http://www.investopedia.com/terms/s/skip-account.asp (last accessed on March 24, 2017).

can be most readily discerned by observing that the entry regarding the "skip account" was inputted for November 1, 2010, and contrasting it with the fact that the number at the center of this case (the "5307 Number") was not inputted to Defendants computer database until November 30, 2010. (Doc. 111-7 at 3, 119-1 at 4).

Finally, even if the Court found that the Loan History was altered by the Defendants, Harrington has provided no reasoning for why the Hughes Affidavit should be stricken. The Hughes Affidavit serves as a linking document for evidence supporting many of Defendants' summary judgment arguments. Striking it as a sanction would be grossly disproportionate to any prejudice, if any, that Harrington has incurred through Defendant's introduction of evidence.

2. Authentication of Exhibits A-4 and A-5

Harrington next argues that Defendants Loan History (Doc. 111-6) and mortgage servicing platform history ("MSP History") (Doc. 111-7) should be stricken because neither document has been authenticated. As a starting point, both documents are plainly hearsay. Hearsay is a statement that the declarant does not make while testifying in trial or at a hearing and that is offered in evidence to prove the truth of the matter asserted in the statement. *See* Fed. R. Evid. 801(c). Hearsay is not admissible unless provided otherwise by a federal statute, the federal rules of evidence or other rules prescribed by the Supreme Court. *See* Fed. R. Evid. 802. When an affidavit submitted in support of, or opposition to, a motion for summary judgment contains inadmissible evidence, the court may strike the inadmissible portions of the affidavit and consider the rest. *See Story v. Sunshine Foliage World, Inc.*, 120 F. Supp. 2d 1027, 1031 (M.D. Fla. 2000). In consideration of this rule, Defendants attempt to offer the documents under the business

records exception to the hearsay rule, under Rule 803(6). To be admissible as a business record, evidence must satisfy the elements of both Rule 803(6) and be authenticated under Rule 901 or 902. *United States v. Dreer*, 740 F.2d 18, 20 (11th Cir. 1984). Rule 803(6) states, in pertinent part, that

> [a] record of an act, event, condition, opinion, or diagnosis [is admissible] if: (A) the records was made at or near the time by—or from information transmitted by—someone with knowledge; (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit; (C) making the record was a regular practice of that activity; (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and (E) neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness.

Fed. R. Evid. 803(6); *see also PNC Bank, Nat. Ass'n v. Orchid Grp. Investments, L.L.C.*, 36 F. Supp. 3d 1294, 1301 (M.D. Fla. 2014); *United States v. Arias–Izquierdo*, 449 F.3d 1168, 1183 (11th Cir.2006) ("The touchstone of admissibility under Rule 803(6) is reliability, and a trial judge has broad discretion to determine the admissibility of such evidence."). A business record is self-authenticating when it is "supported by testimony of a custodian or other qualified witness, or by certification that complies with Fed. R. Evid. 902(11)." *See McCaskill v. Ray*, 279 F. App'x 913, 914 (11th Cir. 2008) (internal punctuation omitted).

Here, Defendants presented both documents along with the Hughes Affidavit, which states that the records were made at or near the time the events they concerned occurred, by either someone with knowledge or from information transmitted by someone with knowledge. (Doc. 111-2 at ¶ 3). Moreover, it states that the records were kept in the ordinary course of RoundPoint's regularly conducted business activities and that it

was RoundPoint's regular practice to maintain such records.  (Doc. 111-2 at 3).  Finally, the Hughes Affidavit states he has personal knowledge of RoundPoint's procedures for creating and maintaining records.  (Doc. 111-2 at 3).  Notably, "[i]t is not necessary that the corporate representative have direct, personal knowledge of each and every fact discussed in her affidavit or deposition."  *Atl. Marine Fla., LLC v. Evanston Ins. Co.*, No. 3:08-CV-538-J-20TEM, 2010 WL 1930977, at *2 (M.D. Fla. May 13, 2010*); see also In re Nat'l Trust Grp., Inc.*, 98 B.R. 90, 92 (Bankr. M.D. Fla. 1989) ("Since the witness need not be the person who actually prepared the record, a qualified witness is . . . one who can explain and be cross-examined concerning the manner in which the records are made and kept.") (internal punctuation omitted).  As such, the Hughes Affidavit unequivocally satisfies subsections (A)-(D) of Rule 803(6) as pertains to Defendant's Loan History and MSP History.

To the extent Harrington argues that the Defendants MSP Records are inadmissible because they were prepared in anticipation of litigation, the Court finds that argument unsupported.  The Eleventh Circuit has held that computer generated business records are admissible under the following circumstances "(1) [t]he records must be kept pursuant to some routine procedure designed to assure their accuracy, (2) they must be created for motives that would tend to assure accuracy . . . and (3) they must not themselves be mere accumulations of hearsay or uninformed opinion."  *United States v. Warner*, 638 F. App'x 961, 963-64 (11th Cir.), cert. denied, 137 S. Ct. 178, 196 L. Ed. 2d 147 (2016).  There is no indication those standards have not been met here.

First, it appears that the MSP History merely lists the phone numbers possessed by RoundPoint for the Harringtons during each day, which is plainly a routine procedure

designed to assure accuracy.  Second, contrary to Harrington's assertion that the document was created in anticipation of litigation, nothing in the report indicates that the document was created for that purpose.  Even if this information is only a subset of the entire data collected by the Defendants for the Harringtons, the Eleventh Circuit has held that the admission of spreadsheets formatted to be easy to understand and printed for litigation are acceptable business record substitutes, so long as "the underlying records were kept in the ordinary course of business and the data was not modified or combined when entered."  *Warner*, 638 F. App'x at 964.  On the third threshold, there is no indication that the MSP History contains "mere accumulations of hearsay or uninformed opinion." *See id.*

The final question for both documents under Rule 803, then, is whether evidence indicates a lack of trustworthiness.  Fed. R. Evid. 803(6)(E).  While Harrington raises no argument on these grounds for the MSP History, he contends that the Loan History is untrustworthy because it was altered by the Defendants.  But that argument does not touch on trustworthiness, and instead goes to the credibility of the information presented. *See Equity Lifestyle Properties, Inc. v. Florida Mowing And Landscape Serv., Inc.*, 556 F.3d 1232, 1244 (11th Cir. 2009) (citing United States v. Garnett, 122 F.3d 1016, 1019 (11th Cir.1997).  Credibility is a question of weight for the trier of fact, and is not grounds for striking the Loan History here.  *See id.*

With these factors in mind, the documents plainly meet the business records exception to hearsay under Federal Rule of Evidence 803(6).  But to be admitted, they must also be authenticated.  The admission of business records requires the court to conclude that they satisfy both Rule 803(6) and 901, but a record introduced through a

qualifying affidavit is self-authenticating under Rule 902(11). *See United States v. Lezcano*, 296 F. App'x 800, 807 (11th Cir. 2008). Because the Loan History and MSP History were produced by the Defendants, and because Hughes swears that Defendants authorized him to sign the affidavit, Rule 902(11) is satisfied and they are admissible.

3. Paragraph Six of the Hughes Affidavit

Harrington next argues that the Court should strike paragraph six of the Hughes Affidavit because Hughes lacks personal knowledge to make the statement. Paragraph six states that "[i]n connection with their Loan application, the Harringtons executed a Construction Agreement." (Doc. 111-2 at ¶ 6).

Federal Rule of Civil Procedure 56(c)(4) states that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Harrington argues that Hughes has no personal knowledge of why or how the Construction Agreement was executed, and therefore he is not qualified to testify about the subject. The Court agrees.

Though Defendants have both the Note and the Construction Agreement, and even though the two documents identify similar amounts – the Note obligates the Harringtons to repay Riverside Bank of the Gulf Coast ("Riverside") $297,100.00 in loaned money while the Construction Agreement obligates the Harringtons to pay Oyster Bay Homes, Inc. ("Oyster Bay") $297,052.36 – neither of the Defendants possesses personal knowledge of the Harringtons' dealings with their builder, Oyster Bay (Docs. 111-5, 111-3). Paragraph six of the Hughes Affidavit will therefore be stricken from the record.

### 4. Paragraph Seven of the Hughes Affidavit

Harrington next argues that paragraph seven of the Hughes Affidavit should be stricken because it violates the best evidence rule. Paragraph seven states that "[t]he Construction Agreement sets forth the funds the Harringtons will receive from their lender for construction of their home on the Property." (Doc. 111-2 at ¶ 7). "Although the phrase 'Best Evidence Rule' is frequently used in general terms, the 'Rule' itself is applicable only to the proof of the contents of a writing." *United States v. Duffy*, 454 F.2d 809, 811 (5th Cir. 1972).[4] Defendants are not trying to prove the contents of the Construction Agreement through their affidavit, but rather to characterize a portion of its function. The best evidence rule is inapposite here.

However, like paragraph six, Defendants lacked personal knowledge to set forth facts regarding the Construction Agreement. For the same reasons set forth regarding paragraph six, the entirety of paragraph seven will be stricken under the Court's inherent power.

### 5. Paragraph Fourteen of the Hughes Affidavit

Harrington next argues that paragraph 14 of the Hughes Affidavit should be stricken because it is hearsay, because Hughes lacks the personal knowledge to make a statement on the record, and because Hughes's testimony is not supported by evidence. Paragraph 14 states "RoundPoint's purpose in calling the Harringtons was to determine the reasons for the delinquency on their account, to discuss repayment options to bring

---

[4] In *Bonner v. City of Prichard, Ala., 661 F.2d 1206, 1207 (11th Cir. 1981)*, the Eleventh Circuit incorporated all decisions of the United States Court of Appeals for the Fifth Circuit prior to October 1, 1981.

the loan current, to discuss alternatives to foreclosure, to comply with rules, regulations and investor guidelines and to assess risks to Multibank's collateral (e.g. insurance and whether the home was currently occupied)."

Harrington's hearsay argument is meritless. It is generally accepted that inadmissible hearsay in an affidavit cannot be considered in summary judgment challenges. *See Macuba v. DeBoer*, 193 F.3d 1316, 1322 (11th Cir.1999). But while Hughes expounds on RoundPoint's purposes in calling the 5307 Number in paragraph 14, at no point does he make a statement that constitutes inadmissible hearsay.

Harrington's argument regarding personal knowledge fairs no better. As stated above, a corporate representative need not have direct, personal knowledge of each and every fact in their affidavit. *See Atl. Marine Fla., LLC*, 2010 WL 1930977, at *2. Moreover, "[w]hen a corporation offers testimony of a representative, the corporation appears vicariously through that agent. The authority of a corporate representative extends not only to facts, but also to the subjective beliefs and opinions of the corporation." *Id.*; *see also Stalley v. ADS All. Data Sys., Inc.*, No. 8:11-CV-1652-T-33TBM, 2014 WL 129069, at *3 (M.D. Fla. Jan. 14, 2014). With this in mind, Hughes did not need to be independently aware of the matters in the affidavit, as his statements are on behalf of the Defendants. *Id.* Paragraph 14 of the Hughes Affidavit is not insufficient for lack of personal knowledge.

Finally, Harrington's argument that paragraph 14 should be stricken because it is unsupported by evidence is also inadequate. Simply because the Loan History lists the purpose of some calls as "collection" does not leave the statement unsupported. In practice, collection is not mutually exclusive with an interest in the successful negotiation

of options to bring the loan current, or to the desire to understand why the Harringtons had defaulted.  For these reasons, the Court will not strike paragraph 14.

6.  Paragraph Seventeen of the Hughes Affidavit

Harrington next argues that paragraph 17 of the Hughes Affidavit should be stricken because it is hearsay, because Hughes lacks the personal knowledge to make the statement in the affidavit, and because the testimony is not supported by the evidence. Paragraph 17 states that "RoundPoint's records reflect that Mr. Harrington called RoundPoint on November 29, 2010 . . . . " (Doc. 111-2 at ¶ 17).  Like Harrington's efforts regarding paragraph 14, the instant arguments must be denied.

First, the Hughes Affidavit again contains no hearsay, as it does not refer to an out of court statement, or express any assertive nonverbal conduct.  *See* Fed. R. Civ. P. 801(c); *see also* United States v. Berkman, 433 F. App'x 859, 863 (11th Cir. 2011) ("Nonverbal conduct may qualify as a hearsay statement if the declarant intended the conduct "as an assertion.").  Second, the simple fact that Hughes did not witness the call does not undermine his personal knowledge about same.  *See* Atl. Marine Fla., LLC, 2010 WL 1930977 at *2.  Similarly, the fact here is no direct evidence to corroborate that Harrington himself called on November 29, 2010, does not merit paragraph 17 to be stricken. As is mentioned above, the affidavit allows Hughes to speak on behalf of facts known by RoundPoint.  *Id.*  The level of support for paragraph 17 may be discerned as a matter of evidentiary weight.  Therefore, the Court declines to strike paragraph 17.

7.  Paragraph Eighteen of the Hughes Affidavit

Harrington also argues that paragraph 18 of the Hughes Affidavit should be stricken because it is hearsay, because Hughes lacked personal knowledge to make the

statement, and because Hughes' testimony is not supported by the evidence.  Paragraph 18 states that "RoundPoint's records reflect that the 5307 Number was provided by Mr. Harrington during the November 29, 2010 call."  This is insufficient to warrant being stricken on the grounds provided by Harrington.

As an initial point, Hughes' testimony is not hearsay because although it avers that Harrington made a statement to RoundPoint on November 29, 2010, the alleged assertion is an opposing party statement made by Harrington in his individual capacity.  *See* Fed. R. Evid. 801(d)(2)(A).  However, Harrington's alternative arguments regarding personal knowledge and supported evidence do not differ materially from what he asserted regarding paragraph 17.  Neither will the Court's adjudication.  The Court declines to strike paragraph 18.

8.  Paragraph 20 of the Hughes Affidavit

Finally, Harrington argues that paragraph 20 of the Hughes Affidavit should be stricken because it is hearsay, because Hughes lacked personal knowledge to make the statement, and because his testimony is not supported by the evidence.  Paragraph 20 states "RoundPoint's records indicate that the 5307 Number was provided as an alternate number by Mr. Harrington during the November 29, 2010 call since it was placed by the call center representative into the phone number position to field in RoundPoint's Mortgage Servicing Platform . . . immediately after the call took place." Like Harrington's arguments did above, they fail here.  Harrington's hearsay argument is denied for the same reasons laid out regarding paragraph 19.  And, like the Court ruled regarding paragraphs 14, 17, and 18, Hughes did not need personal knowledge of the conversation to make a statement on behalf of RoundPoint. *See Atl. Marine Fla., LLC,* 2010 WL

1930977 at *2.  Last, support for the statement is a matter of evidentiary weight.  It is not clear that the Loan History was altered in any way, or that the information omitted is contradictory.  As a result, paragraph 20 will not be stricken.

## B.  Defendants' Motion to Strike

Defendants move to strike several assertions and documents propounded by Harrington.  First, they argue that Harrington's testimony denying that Jamie Harrington had authority to convey the 5307 Number should be stricken because the statements are unsupported and provided for the sole purpose of creating a genuine issue of material fact.  Second, Defendants assert that Harrington has provided several legal conclusions as evidence that must be stricken.  Third, Defendants contend that a number of instances where Harrington provides conflicting, self-serving, or uncorroborated testimony should be stricken.  Last, Defendants argue that Harrington and Miltenberger filed exhibits and put forth testimony about those exhibits that should be stricken because the exhibits are unable to be authenticated and because they lack personal knowledge regarding them.

### 1.  Paragraph 12 of the Harrington Declaration

Defendants first argue that paragraph 12 of Harrington's declaration (the "Harrington Declaration") should be stricken as a sham because overwhelming evidence contradicts Harrington's statement that Jamie Harrington did not have authority to convey the 5307 Number to RoundPoint when she masqueraded as Lori Harrington during a telephone call on June 2, 2011.

When analyzing allegedly contradictory testimony, "courts must find some inherent inconsistency between an affidavit and a deposition before disregarding the affidavit."  *Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1237 (11th Cir. 2010).  This rule is applied

sparingly because "because of the harsh effect . . . [it] may have on a party's case."

*Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1530 (11th Cir. 1987). Prior to finding an inherent inconsistency, the affiant must have clearly answered an unambiguous question.

*See Lane v. Celotex Corp.*, 782 F.2d 1526, 1532 (11th Cir. 1986). "If no inherent inconsistency exists, the general rule allowing an affidavit to create a genuine issue 'even if it conflicts with earlier testimony in the party's deposition,' governs." *Rollins*, 833 F.2d at 1530 (quoting *Kennett–Murray Corp. v. Bone*, 622 F.2d 887, 893 (5th Cir.1980)). Therefore, the Court must distinguish "between discrepancies which create transparent shams and discrepancies which create an issue of credibility or go to the weight of the evidence." *Tippens v. Celotex Corp.*, 805 F.2d 949, 953 (11th Cir. 1986).

Paragraph 12 of the Harrington Declaration states

> I did not authorize or ask Jamie Harrington to contact RoundPoint on my behalf. I did not authorize or ask Jamie Harrington to provide my cell number or any phone number to RoundPoint or to anyone. I did not authorize or ask Lori Harrington to provide my cell number or any phone number to RoundPoint or to anyone.

(Doc. 120-2 at ¶ 12). Defendants contend that Harrington's declaration is contradicted by his own deposition testimony, where he stated that "we had four phones, but anybody was allowed to use them." (Doc. 129-2 at 15:11-14). But a review of the record does not substantiate that argument.

In the Second Amended Complaint, Harrington brings a claim against the Defendants sounding in the violation of the Telephone Consumer Protection Act ("TCPA"). (Doc. 81 at ¶¶ 52-58). The TCPA prohibits "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any

telephone number assigned to a . . . cellular telephone." 47 U.S.C. § 227(b)(1)(A)(iii).  It is well established that the called party may be either the phone's current subscriber, or the non-subscriber customary user of the number.  *See Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1251-52 (11th Cir. 2014); *see also In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 8000–01 (2015).

Turning back to the matter at hand, the Court notes that Harrington has presented both deposition testimony and a sworn statement showing he is the owner, and thus the subscriber of the 5307 Number.  (Docs. 120-2 at ¶ 22; 129-2 at 28:18).  Importantly, neither Lori Harrington nor Jamie Harrington indicated in any way that they customarily use the 5307 Number, and instead Harrington testified that he uses the 5307 Number as the primary contact for Aced Interiors Drywall, a company he owns and operates. (Doc. 129-2 at 35:25-36:22-25).  It is therefore sufficiently clear to the Court that Harrington was the "called party" as a result of the fact that he was both the subscriber and customary user of the 5307 Number.

As the called party, Harrington had the authority to consent to the permissive use of the 5307 Number by either Lori Harrington or Jamie Harrington.  However, consent to use does not equate to status as either the customary user or the subscriber of a phone. A primary aspect of consent is that it is extended from one with the authority to revoke it. *See Osorio*, 746 F.3d 1242, 1255 (11th Cir. 2014) ("[c]ommon-law notions of consent generally allow oral revocation.) (citing *Pepe v. Shepherd*, 422 So.2d 910, 911 (Fla. 3d DCA1982).  With this in mind, the Court finds there is no inherent inconsistency between Harrington's deposition testimony that other members of his family were allowed to use

the 5307 Number, and his statement in his subsequent deposition that neither Jamie Harrington nor Lori Harrington had authority to convey the 5307 Number to RoundPoint.[5]

Though the Eleventh Circuit has established that "[c]onclusory, uncorroborated allegations by a plaintiff in an affidavit or deposition will not create an issue of fact for trial sufficient to defeat a well[-]supported summary judgment motion[,]" *Solliday v. Fed. Officers*, 413 F. App'x 206, 207 (11th Cir. 2011), that holding has not given the parties the green light to continue to litigate their summary judgment efforts through motions to strike. Simply because an allegation may not create an issue of fact on its own does not mean it is ultimately inadmissible. As indicated both herein and in the Court's Order on Summary Judgment, there are plainly issues of fact pertaining to permissive use. The support that paragraph 12 casts on the issue of consent to use the 5307 Number is a matter of evidentiary weight. Therefore, the Court declines to strike paragraph 12.[6]

2. Paragraph Nine of the Harrington Declaration

Defendants next take issue with paragraph nine of the Harrington Declaration, where he states he believed that "all reasonable efforts at persuasion and negotiations had failed[,]" after June 28, 2011, when a RoundPoint representative told him that his account was in foreclosure and subsequently referred him to an attorney. (Doc. 120-2 at ¶ 9). Defendants argue that striking paragraph nine is proper because it is merely

---

[5] Defendants also attempt to argue that Harrington's claims regarding authority are contradicted by Jamie Harrington's and Lori Harrington's failure to remember factual details regarding the June 2, 2011 phone call to RoundPoint. The Court disagrees, as their alleged failures of memory do not rise to an unreasonable level, nor do they directly contradict any testimony offered.

[6] The Court also declines to strike Harrington's statement that neither Jamie Harrington nor Lori Harrington were authorized to provide the 5307 Number on the basis that they are legal conclusions. Authorization is plainly an issue of fact.

Harrington's personal opinion, which they argue is irrelevant. Moreover, they argue that it is an impermissible legal conclusion. The Court disagrees.

Federal Rule of Evidence 401 states that evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action." Fed. R. Evid. 401(a)-(b). Turning to the instant matter, in the Second Amended Complaint Harrington alleges that the Defendants violated the Florida Consumer Collection Practices Act ("FCCPA"). (Doc. 81 at ¶¶ 59-64). The FCCPA prohibits "[w]illfully communicat[ing] with the debtor or any member of her or his family with such frequency as can reasonably be expected to harass the debtor or her or his family," or to willfully engaged in other conduct which would be expected to abuse or harass the same parties. See Fla. Stat. § 559.72(7). A determination of whether a caller has committed harassing or abusive conduct depends on a number of factors, including the number of calls and the intent with which the calls were made. See Story v. J. M. Fields, Inc., 343 So. 2d 675, 677 (Fla. 1st DCA 1977).

Against this backdrop, paragraph nine of the Harrington Declaration is plainly a mere assertion of fact regarding Harrington's perception subsequent to June 28, 2011. Federal Rule of Civil Procedure 56(c)(4) requires that an affidavit filed to support or oppose a motion be made on personal knowledge. See Fed. R. Civ. P. 56(c)(4). For a matter to be considered within an individual's personal knowledge, it must be "derived from the exercise of his own senses, not from the reports of others—in other words, [it] must be founded on personal observation." U.S. v. Evans, 484 F.2d 1178, 1181 (2nd Cir.1973); see also S. Broward Hosp. Dist. v. Coventry Health & Life Ins. Co., No. 14-61157-CIV, 2015 WL 12532580, at *3 (S.D. Fla. June 10, 2015). And, where an affiant

makes statements based on personal knowledge, a district court is "bound to accept [such] statements as true, unless the context demonstrated otherwise." *Martin v. Rumsfeld*, 137 F. App'x 324, 326 (11th Cir. 2005).  With this in mind, the Court finds that Harrington obviously has personal knowledge of his own perceptions, and that the factual relation of those perceptions does not constitute opinion.

Paragraph nine does not express a legal conclusion.  Had Harrington opined that Defendants had violated the FCCPA, that would have constituted a legal conclusion.  But he stopped short of that by limiting his statement to a factual assertion of what he believed after June 28, 2011 regarding RoundPoint's willingness to negotiate his debt obligations. The Court finds no reason to strike paragraph nine.

3.  Paragraph 22 of the Harrington Declaration

Defendants next argue that paragraph 22 of the Harrington Declaration should be stricken from the record because it is contradicted by Harrington's Response in Opposition to Summary Judgment and by his own deposition testimony.  Paragraph 22 of the Harrington Declaration states "[t]he 5307 cell number is my cellphone and I was and am the sole person listed on the account as the subscriber and the person responsible for payment on the account."  (Doc. 120-2 at ¶ 22).

Specifically, Defendants argue that paragraph 22 is contradicted by Harrington's Response in Opposition to their Motion for Summary Judgment, which they claim contends that Jamie Harrington stated that the 5307 Number belonged to her during her call with RoundPoint on June 2, 2011.  In mounting this argument, Defendants both mischaracterize the contents of Harrington's Response in Opposition and overstate the degree of contradiction.  Even a cursory reading of Harrington's Response in Opposition

reveals that it never states that the 5307 Number *belonged* to Jamie Harrington. Instead, paragraph 18 of the Response in Opposition correctly states that during the June 2, 2011 call, the RoundPoint representative did not ask Jamie Harrington for a number where the Harringtons could be contacted, but instead requested the phone number *she* (or, in the explicit language of the call, "you") could be reached at. (Docs. 111-10 3:19-4:1, 120 at ¶ 18).

Similarly, Paragraph 20 of the Response in Opposition did not state that the 5307 Number belonged to Jamie Harrington. Instead, it stated that "Jamie Harrington stated that this was the main number to reach her (Jamie)." (Doc. 120 at ¶ 20). This is merely an interpretation of evidence, rather than a substantive assertion regarding the 5307 Number's ownership. Consequently, it does not contradict Harrington's declaration.[7]

Defendants also argue that paragraph 22 is inconsistent with Harrington's deposition testimony, where he stated that "we had four phones, but anybody was allowed to use them." (Doc. 129-2 at 15:11-14). The Court has touched on this issue above in Section (B)(1), and for the same reasons stated there, it finds nothing inherently contradictory between the two exhibits. Hence, the Court declines to strike paragraph 22.

4. Jamie Harrington's Testimony Regarding the 5307 Number

Defendants next contend that the declaration of Jamie Harrington should be stricken because she provided conflicting testimony in deposition. In deposition, Jamie Harrington stated that the only instruction she recalled Lori Harrington giving her regarding the June 2, 2011 call was to "[a]sk about insurance." (Doc. 120-25 at 38: 3-

---

[7] While a question may exist as to whether Jamie Harrington provided RoundPoint with the 5307 Number as her contact information or for Lori Harrington, that inquiry is irrelevant for the resolution of the instant matter.

11). Even so, in paragraph three (3) of her subsequent declaration, Jamie Harrington denied that she was given the 5307 Number or told to provide it to RoundPoint. (Doc. 120-7 at ¶ 3).

Defendants argue that Jamie Harrington's denial she was granted authority to convey the 5307 Number in her declaration contradicts her deposition testimony and should be stricken from the record . The Court disagrees. Defendants cite no instance where Jamie Harrington was expressly asked in deposition whether she was given the 5307 Number or told to refrain from providing it to RoundPoint. Such a finding is necessary for an affidavit to be found inherently inconsistent with other testimony. *See Lane*, 782 F.2d at 1532. To the extent that Jamie Harrington's declaration calls her deposition testimony into question, any discrepancy merely creates an issue of credibility. *See Tippens*, 805 F.2d at 953. The Court denies Defendants' Motion to Strike Jamie Harrington's declaration, or statements within it.

5. Paragraph Seven of the Harrington Declaration

Defendants next argue that paragraph seven of the Harrington Declaration should be stricken from the record because it conflicts with his deposition testimony about the Construction Agreement. Paragraph seven of the Harrington Declaration reads, "[t]he Construction Agreement sets forth the funds Lori and I were to pay to our builder. The Construction Agreement does not set forth the funds that Lori and I were to receive from the Lender for the construction of our home on our property." (Doc. 120-2 at ¶ 7). Defendants argue that the declaration is contradicted by Harrington's deposition testimony, where he stated that he could not remember if the Construction Agreement

set out the funds he would receive pursuant to the Loan because too much time had passed since the document's execution. (Doc. 129-2 at 57:18-22).

Upon review, Harrington's testimony is not inherently inconsistent. For that to be the case, the Harrington Declaration would have had to affirmatively disclaim that the Construction Agreement set forth the funds he was to receive from Riverside because of the Loan. This is not what occurred here. Instead, Harrington originally testified in deposition he could not remember the details surrounding the function of the Construction Agreement, only to state later in the Harrington Declaration he knew what it did not do. If a discrepancy is created by this evolution in memory, like the Court found regarding Jamie Harrington's declaration, it is merely an issue of credibility, and does not merit paragraph seven to be stricken from the record.

6. Allegations of Other Calls

Defendants next argue that the testimony offered by the Harringtons in multiple declarations alleging that RoundPoint attempted to call cell phones other than the 5307 Number should be stricken because it is uncorroborated and self-serving. In specific, Lori Harrington states in paragraph 11 of her declaration that from May 28, 2013 to May 5, 2014, she estimated that RoundPoint called the 5307 Number, as well as 3 others, between 750 and 1,000 times. (Doc. 120-6 at ¶ 11). Meanwhile in paragraph five of Jamie Harrington's declaration, she stated that she received calls from RoundPoint in the past. (Doc. 120-7 at ¶ 5). The record reveals no indication one way or the other that any calls were made to numbers other than the 5307 Number.

As has been laid out above "[c]onclusory, uncorroborated allegations by a plaintiff in an affidavit or deposition will not create an issue of fact for trial sufficient to defeat a

well[-]supported summary judgment motion." *Solliday*, 413 F. App'x at 207. But while these allegations may not stave off summary judgment, Defendants make no substantive argument regarding why they should be stricken from the record. Nor do they provide any evidence in opposition. Federal Rule of Civil Procedure 56(h) states that if the Court is satisfied that a declaration under Rule 56 is submitted in bad faith, it "may order the submitting party to pay the other party the reasonable expenses . . . . or [be] subjected to other appropriate sanctions." The Court finds no evidence that the Declarations were made in bad faith, and declines to exercise its inherent powers to strike the relevant portions of the declarations of Jamie Harrington and Lori Harrington.

    7. Attachment of RoundPoint Documents in the Harrington and Miltenberger Declarations

Defendants next argue that to the extent Harrington's declaration (Doc. 120-2) and that of his attorney (Doc. 120-8) attached foreclosure-related documents and derivations of RoundPoint's business records, they should be stricken from the record because the records are irrelevant and prejudicial. Specifically, in support of his Response in Opposition to Defendant's Motion for Summary Judgment, Harrington attached several documents including:

- An Order granting leave to withdraw as counsel from the state court foreclosure action instituted by Multibank, *Multibank 2010-11 SFR Venture, LLC*, 12-CA-051325 (Fla. 20th Cir. Ct. filed March 2, 2012) (the "Foreclosure Action"). (Doc. 120-3).
- Multibank's Amended Notice of Production of Trial Exhibits from the Foreclosure Action. (Doc. 120-4).
- A print out of daily entries into RoundPoint's software platform ("MSP") responsible for tracking contact with Harrington. (Doc. 120-5).
- A list of calls made by RoundPoint to Harrington or his family. (Doc. 120-9).

- A list of calls made by RoundPoint to the 5307 Number. (Doc. 120-10).
- A list of calls made by RoundPoint to the 5307 Number after June 28, 2011.  (Doc. 120-11).
- A list of calls made by RoundPoint to the 5307 Number from May 28, 2013 until May 5, 2014.  (Doc. 120-12).
- A list of calls made by RoundPoint to the 5307 Number from May 30, 2010 to May 7, 2013.  (Doc. 120-13).
- A list of all messages RoundPoint left for Harrington or his family.  (Doc. 120-14).
- A list of all messages RoundPoint left on the 5307 Number after March 2, 2012.  (Doc. 120-15).
- A list of all messages RoundPoint left on the 5307 Number after June 28, 2011.  (Doc. 120-16).
- A list of all messages RoundPoint left on the 5307 Number from May 28, 2013 until May 5, 2014.  (Doc. 120-17).
- A list of all messages RoundPoint left on the 5307 Number from May 30, 2012 to May 7, 2013.  (Doc. 120-18).
- A list of the times in which RoundPoint called the 5307 Number multiple times on the same day from May 28, 2013 to May 5, 2014.  (Doc. 120-19).
- A list of the times in which RoundPoint called the 5307 Number on the same day they left a message from May 28, 2013 until May 5, 2014.  (Doc. 120-20).
- An excerpt from the Website "Experian" regarding skip account tracing services.  (Doc. 120-21).

Defendants argue that both Documents 120-9 through 120-20, and Harrington's and Miltenberger's declaration statements regarding them are irrelevant because they are mere summaries and they do not address the central issue on summary judgment – prior express consent.  But while prior express consent to contact the 5307 Number is a central issue, it is not the only one.  It is additionally relevant for the purposes of the FCCPA to discern how many calls were placed to the 5307 Number, under what circumstances those calls were made, the purpose of the calls, whether they were made after reasonable efforts at negotiation experienced failure, the temporal frequency between calls, and the frequency of messages.  *See Story*, 343 So. 2d at 677.  Valuable insight can be gained through the introduction of select records from the underlying

foreclosure case and RoundPoint's call logs. Therefore, the information in those documents is relevant to the instant dispute.

Next, Defendants argue that Harrington's attachment of RoundPoint business records (Doc. 120-5) and state court case records (Docs. 120-3, 120-4) should be stricken because neither he, nor his counsel are qualified to authenticate them. Harrington does not substantively dispute that either set of documents are hearsay. But the Supreme Court has established that a nonmoving party need not produce evidence admissible at trial to avoid summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). This renders Defendants' argument unavailing.

To the extent Defendants draw issue with declaration statements about these documents, it pertains to paragraphs 11 and 15 of the Harrington Declaration (Doc. 120-2), and paragraphs 4-6 of the Miltenberger Declaration (Doc. 120-8). Paragraphs 11 and 15 of the Harington Declaration concern filings in the underlying foreclosure matter. (Doc. 120-2 at ¶¶ 11, 15). As has already been established Rule 56(c)(4), requires an affiant to have personal knowledge of the facts set out in an affidavit filed in support or in opposition to a Motion for Summary Judgment. *See* Fed. R. Civ. P. 56(c)(4). Harrington is competent to identify the Foreclosure Action documents, as he was a party to those proceedings and the nature of the documents is evident in the title. Meanwhile, paragraphs four through five of the Miltenberger Declaration identify summaries of RoundPoint's business records filed by Harrington in opposition to summary judgment. (Doc. 120-8 at ¶¶ 4-5). But, ironically, while the exhibits that the Miltenberger Affidavit describes are not subject to being stricken, his statements regarding same must be stricken because he lacks personal knowledge of RoundPoint's business records.

Defendants also argue that the records should be stricken because they are prejudicial.  Where relevant evidence is prejudicial, it will be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.  But it is well established in the Eleventh Circuit that "when there is no showing of prejudicial harm to the moving party, the courts generally are not willing to determine disputed and substantial questions of law upon a motion to strike. *Augustus v. Bd. of Pub. Instruction of Escambia Cty.*, Fla., 306 F.2d 862, 868 (5th Cir. 1962).  Defendants have made no showing of harm here.  Neither the Foreclosure Action records, RoundPoint business records, summaries of same, nor the remaining declaration descriptions will be stricken.

Finally, Defendants argue that Paragraph six of the Miltenberger Declaration, which identifies a web site printout attached as an exhibit (Doc. 120-8 at ¶ 6), should be stricken from the record because the website purports to interpret the meaning of the word "skip tracing" and only RoundPoint can explain what they mean by the phrase "this is now a skip account" in its records.  The Court does not agree.  Paragraph six is merely an identification of an exhibit.  It does not summarize or describe its contents.  Instead, Miltenberger declares that the exhibit is a true and correct copy of an excerpt from a website.  The Court finds no indication this information is not within Miltenberger's personal knowledge.  The paragraph six will not be stricken from the record.

## C.  Defendants' Supplemental Motion to Strike

Last, Defendants filed a Supplemental Motion to Strike evidence filed with Harrington's Sur-Reply.  (Doc. 137).  They specifically contest Harrington's introduction

of the expert report of Randall Snyder, which concerns automatically-dialed telephone systems, as well as an additional declaration by Harrington.

### 1.  The Propriety of Harrington's Expert Testimony

First, Defendants argue that Harrington's attachment of the Supplemental Declaration of his expert, Randall Snyder, (Doc. 130-2), which discusses automatically-dialed telephone systems, should be stricken from the record because it is irrelevant for the purposes of adjudicating Defendants' Motion for Summary Judgment.  Defendants argue that because they raised no issue whether calls to the 5307 Number were made with an automatically-dialed telephone in their Motion for Summary Judgment, the declaration exceeds the scope of Harrington's Sur-Reply.

The TCPA prohibits "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone." 47 U.S.C. § 227(b)(1)(A)(iii).  This means that where prior express consent has been granted, a party may use an automatic telephone dialing system to contact a cellular telephone.  *See id.*  But the law does not foreclose other actions.  The plain text of the TCPA reveals that the law is not violated where an individual, rather than an automated system, makes a call to a cell phone.  *See id.*; see also *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 642 (7th Cir. 2012).  This means that to determine liability, it is relevant to discern both whether Defendants had prior express consent, and whether an automatically-dialed telephone system was used.

But whether the evidence is relevant to this case is a different matter from whether they are relevant to the resolution of the summary judgment at issue.  In their Motion for

Summary Judgment, Defendants did not put their use of an automatically-dialed telephone at issue. Instead, they obviated that concern by arguing that RoundPoint had prior express consent to contact the 5307 Number. The text of the TCPA indicates that if a party has prior express consent, its use of an automatically-dialed telephone is irrelevant. *See* 47 U.S.C. § 227(b)(1)(A)(iii). Whether and how RoundPoint used an automatically-dialed telephone to contact the 5307 Number is irrelevant for the purposes of adjudicating Defendant's Summary Judgment Motion. But instead of striking the affidavit as a whole, the Court will simply disregard it while addressing the matter at bar.

2. Testimony Regarding Normal Use of the 5307 Number

Finally, Defendants argue that Harrington's Supplemental Affidavit should be stricken because it is a mere attempt to create a genuine issue of material fact by confusing the issues and because it conflicts with prior testimony. In his supplemental affidavit, Harrington swore that "[a]ny member of my family could have made a call with my 5307 phone if the phone they normally used was not available. (Doc. 130-5 at ¶ 6). In addition, he added that "[n]o person other than me normally used the 5307 phone and I was the regular and customary user of the 5307 phone." (Doc. 130-5 at ¶ 7). Finally, he averred that "[e]ach member of my family has a cell phone that they normally carry and use and it is not my 5307 phone." (Doc. 130-5 at ¶ 8).

Upon review, these statements contradict no prior testimony provided by any of the Harringtons. For the same reasons enumerated in Section B(1) above, the Court finds that Harrington's Supplemental Affidavit is not inherently inconsistent with prior testimony. Consequently, the Court declines to strike it.

Accordingly, it is now

**ORDERED:**

1.  Plaintiff Larry Harrington's Motion to Strike (Doc. 119) is **GRANTED in part and DENIED in part**.  Paragraphs six and seven will be stricken from the Affidavit of David Hughes.  (Doc. 111-2 at ¶¶ 6-7).

2.  Defendants' Motion to Strike (Doc. 129) is **GRANTED in part and DENIED in part.**  Paragraphs four and five will be stricken from the Declaration of Chris R. Miltenberger.  (Doc. 120-8 at ¶¶ 4-5).

3.  Defendants' Supplemental Motion to Strike (Doc. 137) is **DENIED.**

**DONE** and **ORDERED** in Fort Myers, Florida this 10th day of April, 2017.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  All Parties of Record