**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

Case No. 2:15-CV-322-FtM-28MRM

LARRY HARRINGTON,

                    Plaintiff,

v.

ROUNDPOINT MORTGAGE SERVICING
CORPORATION and MULTIBANK 2010-1
SFR VENTURE, LLC,

                    Defendants.

_____/

## JOINT PRETRIAL STATEMENT

COME NOW, Defendants, ROUNDPOINT MORTGAGE SERVICING
CORPORATION ("RoundPoint") and MULTIBANK 2010-1 SFR VENTURE, LLC
("Multibank") (collectively, "Defendants"), and Plaintiff, LARRY HARRINGTON ("Plaintiff")
(jointly with Defendants, the "Parties"), and pursuant to this Court's Local Rule 3.06(c), and
hereby submit their Joint Pretrial Statement, showing as follows:[1]

## I.    BASIS OF FEDERAL JURISDICTION:

Plaintiff claims the Court has federal question subject matter jurisdiction over the
TCPA claims. *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740 (2012). Defendants dispute that
the Court has Article III federal subject matter jurisdiction because the Plaintiff has not suffered
any concrete harm. If, however, the Court has federal subject matter jurisdiction, it has

---

[1] By submitting this pre-trial statement Plaintiff contends that he does not waive his request for a jury trial
and his objection to the Court's striking of his jury demand.

jurisdiction pursuant to 15 U.S.C. § 1692k(d) and/or pursuant to 28 U.S.C. § 1367 for pendant state law claims.

## II.     CONCISE STATEMENT OF THE CASE:

This case involves allegations that Defendants (1) violated the Telephone Consumer Protection Act's ("**TCPA**"), Pub. L. No. 102-243, 105 Stat. 2394, codified as amended at 47 U.S.C. § 227 by calling Plaintiff's cell phones with equipment that qualifies as an "automated telephone dialing system" without first obtaining consent to do so from the Plaintiff; and (ii) violated the Florida Consumer Collection Practices Act ("**FCCPA**") by willfully communicating with Plaintiff or any member of his family with such frequency as can reasonably be expected to harass Plaintiff or by willfully engaging in other conduct which can reasonably be expected to abuse or harass Plaintiff in the process of attempting to collect on a consumer debt.

Defendants contend that Plaintiff and his family directly provided RoundPoint with Plaintiff's cell phone number (the "**5307 Number**"), and instructed RoundPoint to use that number when communicating with Plaintiff and his wife, Lori Harrington, a co-borrower, about the Loan.  Defendants further state that the disputed calls were not made with an "automated telephone dialing system," were not willful, were not made with such frequency as can reasonably be expected to harass, and were not for debt collection purposes.  The calls were made to discuss loss mitigation options that could help Plaintiff and Lori Harrington keep their home.  Further, Plaintiff only answered one of the disputed calls, and immediately hung up, and therefore, has no recoverable damages under the TCPA or the FCCPA.

## III.    STATEMENT OF FACTS:

### By Plaintiff:

In September of 2003, Plaintiff and his wife, Lori Harrington (collectively, the "**Harringtons**"), executed an agreement (the "**Construction Agreement**") with Oyster Bay Homes, Inc. ("**Oyster Bay**") in anticipation of building a home at 3161 Rustic Lane, North Fort Myers, Florida 33917 (the "**Property**").   The Construction Agreement set forth the funds the Harringtons were to pay their builder.   The Construction Agreement did *not* set forth the funds that the Harringtons were to receive from the lender for the construction of their home on the Property.   The Construction Agreement included Plaintiff's cell phone number (the "**5307 Number**").

On or about November 26, 2003, Harrington and Lori Harrington took out a loan ("**Loan**") with Riverside Bank of the Gulf Coast ("**Riverside Bank**") in connection with their purchase of the Property. In so doing, they executed a promissory note ("**Promissory Note**") in favor of Riverside Bank that was secured by a mortgage ("**Mortgage**") on the Property. The Note and Mortgage were then put together in a file for the Loan.

Neither Plaintiff nor Lori Harrington provided the Construction Agreement to Riverside Bank at any time.  Neither Plaintiff nor Lori Harrington know how Riverside Bank came to be in possession of the Construction Agreement. Neither Plaintiff nor Lori Harrington authorized Oyster Bay to provide the Construction Agreement to Riverside Bank.  Neither Plaintiff nor Lori Harrington knew that Riverside Bank was in possession of the Construction Agreement until it was produced by RoundPoint in this litigation.

Neither the Promissory Note nor the Mortgage reference the Construction Agreement and the Construction Agreement does not contain a waiver relating to its transmittal to other parties.

The Harringtons subsequently allegedly defaulted on their obligations vis-à-vis the Promissory Note. On numerous occasions the FDIC attempted to contact Plaintiff about the Loan

and was aware that it was not able to contact him. RoundPoint also attempted to contact Plaintiff before November 29, 2010 but was unsuccessful in doing so as the telephone number it was dialing was not a working number. Thus, on November 1, 2010 Plaintiff's account with RoundPoint was listed as a "SKIP" account.

The 5307 Number is Plaintiff's individual cellphone and he was and is the sole person listed on the account as the subscriber and the person responsible for payment on the account. The 5307 Number was part of a group of cell phones on a family plan paid for by Plaintiff. Plaintiff used the 5307 Number as the primary contact for Aced Interiors Drywall, a company Plaintiff owns and operates.

While Defendants allege that, on November 29, 2010, Plaintiff called to check on the status of the loan and, in so doing, provided RoundPoint with the 5307 Number, Plaintiff disputes this allegation, and testifies that he did not provide his 5307 Number (or any cell number) to RoundPoint on November 29, 2010 or any other date.

Although all phone calls with agents and account holders are recorded, and, indeed, RoundPoint has a transcript of other Harrington calls, RoundPoint does not have a transcript of the alleged November 29, 2010 phone call during which RoundPoint claims Mr. Harrington gave RoundPoint his 5307 Number.   Defendants have provided only an entry on an internal activity database for that day that reads "BRRW CALLED RQST STATS OF ACCT." Such an entry in no manner indicates that Plaintiff gave Defendant *any* number at which he could be reached.  As stated previously, Plaintiff denies that he provided his cell number to RoundPoint. Additionally, the records do not state that "Larry Harrington" called.  The documents only states that "BRRW" called.  There is no evidence that BRRW means Larry Harrington.

Jamie Harrington (Plaintiff's daughter) contacted RoundPoint on June 2, 2011 at the request of her mother, Lori Harrington, because Lori Harrington was ill with breast cancer. Lori Harrington asked Jamie Harrington to place the call in order to determine certain information about the insurance on the Harringtons' home. According to the transcript of the call produced by Defendants, Jamie Harrington gave RoundPoint the 5307 Number as the "the number she could be reached at."

Plaintiff did not authorize Jamie Harrington to provide his cell number to RoundPoint or to any anyone. Lori Harrington did not give Jamie Harrington Plaintiff's cell phone number (the 5307 Number), nor did she instruct Jamie Harrington to provide that cell number to RoundPoint or to any anyone.

However, RoundPoint began attempting to contact Plaintiff via the 5307 Number on that day and continued to do so in the days, months, and years that followed. Each time RoundPoint attempted to contact Plaintiff, it was for the purpose of collecting a debt. The Mini-Miranda warning that RoundPoint was giving with each call states "Federal law requires we inform you that RoundPoint Mortgage Servicing Corporation is a debt collector attempting to collect a debt and any information obtained will be used for that purpose."

On June 28, 2011, Plaintiff called RoundPoint to request information regarding his account and to dispute the amount RoundPoint claimed he owed. After asking him a series of security questions that **did not include requesting a telephone number where he could be reached,** RoundPoint informed him that his mortgage was in foreclosure because the account had been behind since September 2010. Plaintiff was told on that date that the account was "active in foreclosure and [RoundPoint] [has] stopped in the account." Plaintiff was also told by RoundPoint that "**they will not be taking any payments.**" RoundPoint would not give Plaintiff

details about the account. Plaintiff was then told to contact RoundPoint's attorney for information about the account.  Due to the fact that RoundPoint stated that the property was in foreclosure, that it would not be taking any more payments, and that it would not give Plaintiff any details about the account, all reasonable efforts at persuasion and negotiations on the debt had failed at that point.

On March 2, 2012, Multibank filed a foreclosure action against Plaintiff in the Circuit Court of the Twentieth Judicial Circuit in and for Lee County. As of at least that date, if not on June 28, 2011, all reasonable efforts at persuasion and negotiations on the debt had failed.  At that time, Plaintiff hired an attorney to defend himself and Lori Harrington in the foreclosure.

At least as of May 30, 2012, RoundPoint was aware that Plaintiff was represented by counsel (the Hagen Law Firm). The Hagen Law Firm withdrew as Plaintiff's counsel on May 7, 2013. RoundPoint's records reflect that between the date RoundPoint learned Plaintiff was represented by counsel and the date the Hagen Firm withdrew, RoundPoint called Plaintiff at least 141 times and left at least 67 messages even though he was represented by counsel. The calls were made outside the statute of limitations under the FCCPA; otherwise the calls would be a violation of section 559.72(18) of the FCCPA.

On May 5, 2014, RoundPoint received a facsimile from an attorney stating that he represented Harrington and directing all future communications to his office.  Only at that point in time, when RoundPoint learned that Plaintiff was again represented by an attorney, did RoundPoint cease calling Plaintiff.

RoundPoint's records reflect that after Multibank/RoundPoint filed for foreclosure, RoundPoint made at least 453 calls to Plaintiff, including at least 263 calls that were made within the statute of limitations of the FCCPA.  Additionally, RoundPoint's records reflect that

RoundPoint left at least 172 messages for Plaintiff after foreclosure, including at least 74 messages that were left within the statute of limitations of the FCCPA.

Plaintiff disputes that the call logs and other records of RoundPoint accurately reflect the number of calls RoundPoint made to the 5307 Number and cell phones of family members that are part of Plaintiff's family plan for which he pays.  Plaintiff estimates that approximately 1752 calls were made during the four years in question (using the formula of (365 days x 4 years) x 1.2 calls per day). Accordingly, the actual number of calls placed by RoundPoint to Plaintiff's cellular telephone numbers is no less than 1752 calls, which includes the 652 calls RoundPoint admitted to placing.

With regard to the FCCPA claim of harassment the volume of calls is astonishing and alone makes this case outside the ordinary:

- Between June of 2010 and May of 2014, RoundPoint called Plaintiff and his family at least 652 times.

- Between June of 2010 and May of 2014, RoundPoint left at least 317 messages for Plaintiff or his family.

- On the one occasion when Plaintiff spoke to a representative of RoundPoint on June 28, 2011, RoundPoint told him they would not accept payments, would not provide any information to Plaintiff, said his property was in foreclosure, and told him to contact RoundPoint's attorney. After doing so RoundPoint called Plaintiff at least another 527 times and left at least another 237 messages.

- Within the statute of limitations period for the FCCPA, RoundPoint called Plaintiff at least 263 times, after foreclosure had begun.

- Within the statute of limitations period for the FCCPA, RoundPoint left at least 74 messages for Plaintiff, after foreclosure had begun.

Aside from the sheer volume of calls, the manner in which the calls were placed shows a violation of the FCCPA. During the statute of limitations period alone, on five occasions RoundPoint called Plaintiff four times in a single day, on 24 occasions RoundPoint called

Plaintiff three times in a single day, and on 40 occasions RoundPoint called Plaintiff twice in a single day. On two days RoundPoint left multiple messages.  On 14 days RoundPoint called back after leaving a message on that same day.  On at least 29 occasions RoundPoint called back within 2 hours after a first call.  Once RoundPoint called back 3 minutes later, once 5 minutes later, once 8 minutes later, once 13 minutes later, once 20 minutes later and once 30 minutes later, all within the statute of limitations.

Plaintiff was upset by the harassing nature of RoundPoint's conduct and under the FCCPA is entitled to statutory, actual and punitive damages.

**By Defendants:**

The Loan

On or about November 26, 2003, Plaintiff and his wife, Lori Harrington ("Mrs. Harrington" and together with Mr. Harrington, the "Harringtons") executed a promissory note (the "Note") in favor of Riverside Bank of the Gulf Coast ("Riverside Bank") in connection with their purchase of real property and construction of a home located at 3161 Rustic Lane, North Fort Myers, Florida 33917 (the "Property").  The Note is secured by a mortgage ("Mortgage") on the Property executed by the Harringtons.  The Mortgage secures payment for funds lent to the Harringtons to purchase the Property and construct their home (the "Loan").  In connection with their Loan, in September 2003, the Harringtons executed a Construction Agreement.  The Construction Agreement sets forth the funds the Harringtons will receive from their lender for the construction of their home on the Property.  The Harringtons provided their contact information on the Construction Application, including a cell phone number ending in 5307 (the "5307 Number").  This is the cell phone number at issue in this case.  Plaintiff did not provide any instructions on or in connection with the Construction Agreement limiting the use of the information provided in it.

The Harringtons provided the Construction Agreement to Riverside Bank as part of the loan origination process.  Riverside Bank maintained the loan origination file, which also included the Note, the Mortgage, and numerous other loan related documents.  ("the Loan File"). In 2009, Riverside Bank was taken over by the Federal Deposit Insurance Company ("**FDIC**"), and in the process, the FDIC acquired all of Riverside Bank's loans.  Later, Multibank acquired the Note from the FDIC, who as a result of the transaction, transmitted the Loan File to RoundPoint, Multibank's loan servicer.  RoundPoint received the Construction Agreement via the Loan File.  RoundPoint maintained and used the Loan File as part of RoundPoint's loan servicing duties.  The Loan File was originally created and maintained by Riverside Bank as business records to assist in its loan servicing duties.

The Harringtons defaulted on the Loan after failing to make the payment due September 1, 2010 and all subsequent payments.

### The Harringtons' Consent to Be Called on the 5307 Number

RoundPoint, as servicer for the Loan, attempted to contact the Harringtons to discuss the Loan as it is required to do under various rules, regulations and investor guidelines.  In early 2010, the only telephone numbers RoundPoint had for the Harringtons in its loan records had been disconnected.  RoundPoint maintains it loan records on a mortgage servicing platform (the "MSP").  Eventually, the disconnected telephone numbers were removed from the MSP and there were no other telephone numbers for the Harringtons in the MSP.  On November 29, 2010, however, RoundPoint's loan history records (the "Loan History") reflect that Plaintiff called RoundPoint and provided two telephone numbers where the Harringtons could be reached. Plaintiff provided a telephone number ending in 6864 (the "6864 Number") and he also provided the 5307 Number.  By November 30, 2010, RoundPoint had updated the MSP to reflect that the

6864 Number was the primary number for calls related to the Loan, and the 5307 Number was the secondary number.  RoundPoint did not know the 5307 Number was a cell phone.

RoundPoint's Loan History reflects only one call to the 5307 Number between November 29, 2010 and June 2, 2011, when the 5307 Number was provided to RoundPoint yet again.  On June 2, 2011, someone who identified herself as Mrs. Harrington called RoundPoint to inquire about hazard insurance on the Property.  This telephone conversation is also described in RoundPoint's Loan History.  The caller accurately provided the last four digits of both Mrs. Harrington's and Plaintiff's social security numbers.  Significantly, the caller provided the 5307 Number as the number to call the Harringtons regarding the Loan.  When asked whether there were any other telephone numbers, the caller responded "no, that's the main number."  The caller turned out to be the Harringtons' daughter, Jamie Harrington.  Mrs. Harrington gave Jamie Harrington permission to call RoundPoint about the Loan, and to impersonate her.  Similarly, Plaintiff provided Mrs. Harrington with actual authority to speak with their joint creditors and to provide Plaintiff's personal information to them.[2]  Thus, Mrs. Harrington provided Plaintiff's actual authority to provide their creditors with his personal information to Jamie Harrington for the June 2, 2011 call.  Jamie Harrington acted within her authority when she instructed RoundPoint to use the 5307 Number when calling the Harrington about the Loan.

Consistent with Jamie Harrington's instructions and authority, RoundPoint, updated the MSP to reflect that the 5307 Number was the only number to call the Harringtons regarding the Loan.  After June 2, 2011, RoundPoint used the 5307 Number to try to contact the Harringtons regarding the Loan.

---

[2] The parties do not dispute that the caller was actually Jamie Harrington.  The Court has found that Jamie Harrington had actual authority to call RoundPoint on June 2, 2011 and to provide the 5307 Number. (ECF No. 140 at 14, 16.)

On June 28, 2011, Plaintiff called RoundPoint to inquire about the rejection of his loan payments.  After asking a series of security questions that did not include requesting a telephone number where he could be reached, RoundPoint informed Plaintiff that his mortgage was in foreclosure because the account had been behind since September 2010.  The RoundPoint representative then stated that "[RoundPoint] will not be taking any payments," but offered to send a loan modification package to work out a solution.  RoundPoint's procedures dictate that they do not accept payments during a foreclosure without full resolution of the outstanding amount, typically through a loan modification.

The June 2, 2011 and June 28, 2011 calls are the only two conversations between RoundPoint and the Harringtons during the relevant time period in this case. During the two-year period prior to the filing of this Complaint, RoundPoint's records reflect that it called Plaintiff on average 11 times per month.  On most days, RoundPoint did not call at all or called 1-2 times. RoundPoint's records reflect that it always placed calls to Plaintiff between the hours of 8:00 a.m. and 9:00 p.m.  The calls by RoundPoint were made in an attempt to negotiate a resolution to the Harringtons' default on the Loan, and to provide an opportunity for the Harringtons to keep the Property.  RoundPoint's records reflect that Plaintiff did not answer any of RoundPoint's calls, nor did he request that RoundPoint to stop calling him at the 5307 Number.  RoundPoint never used abusive language or left threatening messages.  Plaintiff does not allege that they did. In fact, the one call between RoundPoint and Plaintiff during the four years prior to filing the Complaint is recorded and clearly shows that RoundPoint's representative was not abrasive.

On or about May 5, 2014, RoundPoint received a facsimile from an attorney purporting to represent the Harringtons.  This letter instructed RoundPoint to direct all future communications regarding the Loan to the Harringtons' attorney.  Thereafter, RoundPoint made

no further calls to the Harringtons.  Prior to May 5, 2014, Plaintiff never asked RoundPoint not to call him, made no mention of the 5307 Number being a cell phone, and never indicated that Mrs. Harrington was not authorized to act on Plaintiff's behalf.

### RoundPoint's Telephone Systems

RoundPoint used two different telephone systems during the relevant time period.  From May 28, 2011 through March 19, 2013, RoundPoint used the Cisco phone system.  Beginning March 19, 2013 through May 5, 2014, when Plaintiff revoked consent, RoundPoint used the Cameo phone system.  During use of both phone systems, RoundPoint representatives manually dialed calls.  That is, the representative picked up the phone and physically pushed the buttons to dial telephone numbers.  Other representatives made calls using "preview" mode.  That is, the system presented a loan; the representative then reviewed the loan information presented and made their own personal decision about whether to place a call.  If the RoundPoint representative decided to make a call, they pressed a button.  The representative waited while the phone rang. No simultaneous calls were made.  The representative chose whether and when to end the call. The human involvement on these calls makes the TCPA inapplicable because the calls were not "autodialed."

### Multibank is Not Vicariously Liable

The only evidence Plaintiff proffers of vicarious liability is a servicing agreement between RoundPoint Ventures I, LLC and RoundPoint Mortgage Servicing Corporation, and a power of attorney conferring authority upon RoundPoint Ventures I, LLC by Multibank 2010-1 SFR Venture, LLC.  RoundPoint Ventures I, LLC is not in privity with both RoundPoint and Multibank, nor is it a party to this case.  Further, the testimony of RoundPoint's corporate representative only establishes that RoundPoint was servicing the Loan and making calls "for the

benefit" of Multibank.   There is no evidence that RoundPoint: had access to Multibank's electronic systems.  Likewise, there is no evidence that Multibank: allowed RoundPoint to enter information into its computer systems; approved, reviewed, or wrote any of RoundPoint's call scripts, controlled the content or timing of the calls at issue, or knew of the alleged TCPA violations and failed to stop them.

## IV.   **TRIAL EXHIBIT LISTS:**

    1.    Plaintiff's Exhibit List is attached hereto as Exhibit 1.

    2.    Defendants' Exhibit List is attached hereto as Exhibit 2.

## V.   **TRIAL WITNESS LISTS:**

    1.    **Plaintiff's Trial Witnesses.**

        (a)    Larry Harrington

        (b)    Lori Harrington

        (c)    Jamie Harrington

        (d)    David Hughes

        (e)    Any witness necessary for impeachment or rebuttal purposes.

    2.    **Defendants' Trial Witnesses.**

        (a)    David Hughes

        (b)    Larry Harrington

        (c)    Lori Harrington

        (d)    Jamie Harrington

        (e)    Corporate Representative, Riverside Bank of the Gulf Coast.

        (f)    Corporate Representative, Oyster Bay Homes, Inc.

        (g)    Any witness necessary to authenticate documents.

        (h)    Any witness necessary for impeachment or rebuttal purposes.

VI.     **EXPERT WITNESSES**:

      1.      Plaintiff's Expert Witness is Randall Snyder.

      2.      Defendants do not intend to call any expert witness in this matter.

VII.    **PLAINTIFF'S STATEMENT OF DAMAGES**:

Plaintiff requests statutory damages of $500.00 per call for each violation of the TCPA. *Lardner v. Diversified Consultants Inc.,* 1:13-CV-22751-UU, 2014 WL 1778960 at *4 (S.D. Fla. 2014)("'The TCPA is essentially a strict liability statute' that 'does not require any intent for liability except when awarding treble damages.'"). Plaintiff also request that the damages be trebled on the basis of a finding that the violations were willful. *Lary v. Trinity Physician Fin. & Ins. Servs.*, 780 F.3d 1101, 1107 (11th Cir. 2015) ("[t]he requirement of 'willful or knowing' conduct requires the violator to know he was performing the conduct that violates the statute.").

Plaintiff requests statutory damages of $1,000.00 for each adjudication of a violation of the FCCPA.  Plaintiff also request actual damages, punitive damages, attorneys' fees and costs. Fla. Stat. § 559.77(2).

VIII.   **DEPOSITIONS TRIAL LIST**:

      1.  Plaintiff will present expert witness Randall Snyder by deposition.[3]

IX.     **STATEMENT OF UNCONTESTED FACTS**

      1.      In September of 2003, the Harringtons executed an agreement (the "Construction Agreement") with Oyster Bay Homes, Inc. ("Oyster Bay") in anticipation of building a home at 3161 Rustic Lane, North Fort Myers, Florida 33917 (the "Property").

      2.      On November 26, 2003, Plaintiff and Lori Harrington took out a loan ("Loan") with Riverside Bank of the Gulf Coast ("Riverside Bank") in connection with their

---

[3] Defendants have objected to Randall Snyder testifying as an expert witness in this case.  *See* Defendants' Amended Motion to Exclude Expert Witness Testimony of Randall Snyder, ECF No. 128.

purchase of the Property. In so doing, they executed a promissory note ("Promissory Note") in favor of Riverside Bank that was secured by a mortgage ("Mortgage") on the Property.

3.      In 2009, Riverside Bank was taken over by the Federal Deposit Insurance Company ("FDIC"), and in the process the FDIC acquired all of Riverside Bank's loans. Later, Multibank acquired the loan from the FDIC.

4.      The Harringtons defaulted on their obligations vis-à-vis the Note and the Mortgage.

5.      RoundPoint's Loan History reflects only one call to the 5307 Number between November 29, 2010 and June 2, 2011.

6.      On June 2, 2011, RoundPoint received a telephone call from Jamie Harrington.

7.      On June 28, 2011, Plaintiff called RoundPoint to request information regarding his account.

8.      The 5307 Number was part of a group of phones on a family plan paid for by Plaintiff

9.      RoundPoint's records reflect that Plaintiff did not request that RoundPoint not contact him at the 5307 Number.

10.     Plaintiff only answered one of the calls from RoundPoint, and on that occasion he hung up without speaking

11.     Plaintiff did not specifically request that RoundPoint stop contacting him on the 5307 Number.

12.     On March 2, 2012, Multibank filed a foreclosure action in the Circuit Court of the Twentieth Judicial Circuit in and for Lee County, Florida. *Multibank 2010-11 SFR*

*Venture, LLC v. Harrington et al.*, 12-CA-051326 (Fla. 20th Cir. Ct. filed March 2, 2012).

13.      On May 5, 2014, RoundPoint received a facsimile from an attorney stating that he represented Plaintiff and directing all future communications to his office. RoundPoint then ceased calling the 5307 number.

14.      RoundPoint used two different telephone systems during the relevant time period. From May 28, 2011 through March 19, 2013, RoundPoint used the Cisco phone system. Beginning March 19, 2013, through May 5, 2014, RoundPoint used the Cameo phone system.

## X.   CONCISE STATEMENT OF ISSUES OF LAW ON WHICH THERE IS AGREEMENT

1.      The TCPA prohibits "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone." 47 U.S.C. § 227(b)(1)(A)(iii).

2.      An ATDS is defined as "equipment which has the capacity— (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. §227(a)(1).

3.      The FCC has "conclude[d] that the provision of a cell phone number to a creditor, e.g., as part of a credit application, reasonably evidences prior express consent." *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 F.C.C. Rcd. 559, 564 (2008).

4.      Consent is an affirmative defense on which the Defendants have the burden of proof. *See*, *Williamceau v. Dyck-Oneal, Inc.*, No. 2:16-CV-855-FTM-29CM, 2017 WL

2544872, at *3 (M.D. Fla. June 13, 2017) ("[e]xpress consent is not an element of a plaintiff's prima facie case but is an affirmative defense for which the defendant bears the burden of proof.")

5.    Actual agency in Florida does not require the principal to specify the singular acts for which his or her authority exists as long as the acts are incidental to or reasonably necessary to accomplish what is authorized. *See Board of Trustees of the City of Delray Beach Police and Firefighters Retirement System v. Citigroup Global Markets, Inc.,* 622 F.3d 1335, 1342–43 (11th Cir. 2010).

6.    Apparent authority exists "only if each of three elements are present: (a) a representation by the purported principal; (b) a reliance on that representation by a third party; and (c) a change in position by the third party in reliance on the representation." *Mobil Oil Corp. v. Bransford*, 648 So. 2d 119, 121 (Fla. 1995).

7.    An agent's actions, on their own, are insufficient to establish authority to act on the principal's behalf. *See Owen Indus., Inc. v. Taylor*, 354 So. 2d 1259, 1262 (Fla. 2d DCA 1978).

8.    Even where apparent authority is granted, the scope of the agency is limited to that which the principal has authorized the agent to do. *See Poe & Case Assocs., Inc. v. Estate of Vogler*, 559 So. 2d 1235, 1236 (Fla. 3d DCA 1990).

9.    Ratification "requires an affirmative showing of an intention on the part of the principal to ratify the act in question." *Carolina-Ga. Carpet & Textiles, Inc. v. Pelloni*, 370 So. 2d 450, 452 (Fla. 4th DCA 1979); *see also G & M Rests. Corp. v. Tropical Music Serv., Inc.*, 161 So. 2d 556, 557 (Fla. 2d DCA 1964)

10.     Florida Statute § 559.72(7) prohibits "willfully communicat[ing] with the debtor or any member of her or his family with such frequency as can reasonably be expected to harass the debtor or her or his family, or willfully engag[ing] in other conduct which can reasonably be expected to abuse or harass the debtor or any member of her or his family." Fla. Stat. § 559.72(7).

11.     The FCCPA provides that "[a] person shall not be held liable in any action brought under this section if the person shows by a preponderance of the evidence that the violation was not intentional and resulted from a bona fide error, notwithstanding the maintenance of procedures reasonably adapted to avoid such error." Fla. Stat. 559.77(3).

## XI.     STATEMENT OF ISSUES OF FACT TO BE LITIGATED

1.     Whether RoundPoint is registered with the State of Florida as a consumer collection agency.

2.     Whether the only debts RoundPoint collects are mortgages such as the mortgage owed by Plaintiff.

3.     Whether Defendant's call center agents, like those that called Plaintiff, are compensated in part on a commission/bonus basis and would receive additional pay for having Plaintiff repay his mortgage.

4.     Whether Plaintiff or his agent provided consent to Defendants to call his cell phone.

5.     Whether Plaintiff heard his phone ring during any or all of the calls from RoundPoint.

6.     If Plaintiff heard any calls from RoundPoint, which of the calls did he hear.

7.     If Plaintiff did hear calls, can he establish these calls were not from other creditors or callers.

8.      Whether Plaintiff answered RoundPoint's calls on more than one occasion.

9.      Whether RoundPoint's alleged use of an ATDS caused Plaintiff greater harm than had the calls been manually dialed.

10.      Whether RoundPoint had any or all of the relevant licenses listed in the Cameo and Cisco telephone manuals.

11.      Whether Plaintiff provided the 5307 Number to his builder Oyster Bay Homes, Inc. ("**Oyster Bay**") in the Construction Agreement.

12.      Whether the Construction Agreement was a part of the loan origination file which was transmitted to RoundPoint by the FDIC.

13.      Whether Plaintiff provided RoundPoint with the 5307 Number on November 29, 2010.

14.      Whether Plaintiff authorized the June 2, 2011 call or had any knowledge of the substantive content of the June 2, 2011 call.

15.      Whether Plaintiff authorized Lori Harrington or Jamie Harrington, by actual or apparent authority, to provide the 5307 Number to RoundPoint

16.      Whether RoundPoint's representative's questions during the June 2, 2011 call reasonably established the identity of the caller.

17.      Whether the terms of the Harringtons' Mortgage establish that either of them had authority to act in connection with the Loan.

18.      Whether more than one call was placed to the 5307 Number from November 29, 2010 to June 2, 2011.

19.      Whether Plaintiff ever told RoundPoint that Jamie Harrington or Lori Harrington did not have authority to provide the 5307 Number.

20.     Whether the purpose for RoundPoint's calls was to discuss with Plaintiff entering into an agreement for repayment so that the Harringtons could keep their home.

21.     Whether RoundPoint was required to make certain calls by certain regulations and servicer guidelines.

22.     Whether the ratio of calls placed by RoundPoint and the number of actual successful conversations with the Plaintiff suggests a difficulty of reaching Plaintiff, rather than an intent to harass.

23.     Whether RoundPoint's representative on the June 28, 2011 call was abrasive.

24.     Whether the content of RoundPoint's calls or messages included threats, yelling or offensive language.

25.     Whether RoundPoint was collecting a debt when it called Plaintiff.

26.     Whether RoundPoint had communicated all reasonable options for resolution of the default to Plaintiff.

27.     Whether RoundPoint's established procedures dictate they may not accept payments during a foreclosure without full resolution of the outstanding amount, typically through a loan modification.

28.     Whether RoundPoint's computer system automatically entered "collections" in the notes notwithstanding the purpose for the call during the relevant time period in this case.

29.     Whether RoundPoint's procedures required giving the "mini-Miranda" on all calls during the relevant time period in this case.

30.     Whether Plaintiff's mortgage debt was owed to, or guaranteed by, the FDIC at the time the calls at issue in this case were made.

31.     Whether RoundPoint had unfettered access to Multibank's systems.

32.     Whether Multibank authorized RoundPoint to use its name or marks.

33.     Whether Multibank knew that RoundPoint was violating the TCPA and failed to stop it.

34.     Whether RoundPoint's violation of the FCCPA was intentional.

35.     Whether RoundPoint's policies instructed representatives to call no more than three times a day.

36.     The length of each call from RoundPoint to Plaintiff.

37.     The value of Plaintiff's time for the number of seconds each call from RoundPoint to Plaintiff took.

38.     Whether the application of the statutory damages in the TCPA would result in a ratio of statutory damages to actual damages in excess of 9 to 1.

39.     Whether RoundPoint called Plaintiff using equipment that had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, or from a list or database of numbers, and to dial such numbers without human intervention.

40.     The number of calls RoundPoint made to Plaintiff with the Cisco dialing system.

41.     The number of calls RoundPoint made to Plaintiff with the Cameo dialing system.

42.     The number of calls RoundPoint made to Plaintiff.

43.     The number of calls RoundPoint made to members of Plaintiff's family.

44.     Whether Defendants' alleged violations of the TCPA, if any, were willful.

45.     Whether RoundPoint continued to contact Plaintiff after reasonable efforts at persuasion or negotiation had failed.

46.     Whether RoundPoint willfully communicated with Plaintiff or any member of Plaintiff's family with such frequency as can reasonably be expected to harass Plaintiff or his family.

47.     Whether RoundPoint willfully engaged in conduct towards Plaintiff which can reasonably be expected to abuse or harass Plaintiff or any member of Plaintiff's family.

48.     Whether Plaintiff suffered actual damages as a result of RoundPoint's conduct.

## XII.    CONCISE STATEMENT OF ISSUES OF LAW WHICH REMAIN FOR DETERMINATION BY THE COURT

**Plaintiff's Proposed Issues of Law:**

1.      Congress enacted the TCPA to protect telephone users "from unwanted communications that can represent annoying intrusions into daily life." Declaratory Ruling, *Rules & Regs. Implementing the Tel. Cons. Prot. Act. Of 1991*; *GroupMe, Inc./Skype Communications S.A.R.L Pet.for Expedited Declaratory Ruling,* 29 FCC Rcd. 3442, ¶ 1 (2014) ("GroupMe Ruling").

2.      Congress specifically targeted autodialed and prerecorded calls because it considered such calls to be "a greater nuisance and invasion of privacy than calls placed by 'live' persons." *See* Notice of Proposed Rulemaking & Memorandum Opinion & Order, *Rules and Regs. Implementing the Tel. Cons. Prot. Act of 1991,* 17 FCC Rcd. 17459, 17474, ¶ 24 (2002) (citing S. Rep. 102-178, at 2 (1991)).

3.      In 2003 the FCC ruled that "a predictive dialer falls within the meaning and statutory definition of 'automatic telephone dialing equipment' and the intent of Congress." Report & Order*, Rules & Regs. Implementing the Tel. Cons. Prot. Act of 1991*, 18 FCC Rcd. 14014, 14093, ¶ 133 (2003) ("2003 TCPA Order").

4.      In 2008 the FCC "affirm[ed]" its conclusion that "a predictive dialer constitutes an [autodialer] and is subject to the TCPA's restrictions." Declaratory Ruling, *Rules & Regs. Implementing the Tel. Cons. Prot. Act of 1991*; *Request of ACA Int'l for Clarification & Declaratory Ruling*, 23 FCC Rcd. 559, 566, ¶ 12 (2008) ("ACA Order").

5.      The FCC has instructed that the term "autodialer" must be broadly construed in order to ensure that new technology is not used to work around the law's consumer protections.  Declaratory Ruling & Order, *In the Matter of Rules & Regs. Implementing the Tel. Cons. Prot. Act of 1991*, *Pets. For Declaratory Ruling & Exemption,* 30 F.C.C.Rcd. 7961, 7974, ¶ 15 ( 2015) ("2015 TCPA Order").

6.      Both the FCC and the courts have ruled that the controlling issue is whether a given dialing system has the "capacity" to function as an autodialer, not how a telemarketer uses the system.  2003 TCPA Order at ¶¶ 133-34; *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 (9th Cir. 2009) (a dialing system "need only have the capacity" to function as an autodialer).

7.      The FCC ruled that "autodialers need only have the 'capacity' to dial random and sequential numbers, rather than the 'present ability' to do so. Hence, any equipment that has the requisite 'capacity' is an autodialer and is therefore subject to the TCPA." 2015 TCPA Order at ¶ 15.

8.      The FCC ruled that "the capacity of an autodialer is not limited to its current configuration but also includes its potential functionalities." *Id.* at ¶ 16.

9.      The FCC also explained that dialing equipment qualifies as an autodialer under the TCPA if it can be "paired with predictive dialing software." *Id.* at ¶ 14.

10.     In 2005, an association of debt collection companies petitioned the Commission for a declaratory ruling that the TCPA and the FCC's implementing rules do not prohibit creditors and debt collectors from making autodialed or prerecorded calls to cellular telephone numbers for purposes of debt collection. ACA Order at 563, ¶ 8 . The FCC granted the petition in part and denied it in part. *Id*. at 568, ¶ 17. The FCC held that a person provides express consent to receive autodialed or prerecorded debt collection calls by providing his or her cellular telephone number "to a creditor in connection with an existing debt." *Id.* at 559, ¶ 1.

11.     The FCC further determined that such consent applies to calls made both by the creditor and by a "third party collector [acting] on behalf of that creditor." *Id*. at 565, ¶ 10. The FCC emphasized, however, that "prior express consent is deemed to be granted only if the wireless number was provided by the consumer to the creditor, and that such number was provided during the transaction that resulted in the debt owed." *Id*. at 564-65, ¶ 10.

12.     In the ACA Order, the Commission held that an individual's provision of his or her cellular telephone number conveys express consent to receive autodialed or prerecorded calls by creditors or third party debt collectors only if the telephone number was supplied "in connection with an existing debt." *Id.*at 559, 563, ¶¶ 1, 9.

13.     Such consent qualifies "only if": (1) the cellular number "was provided by the consumer to the creditor," and (2) the cellular "number was provided during the transaction that resulted in the debt owed." *Id*. at 564-65, ¶ 10.

14.     "Calls placed by a third party collector on behalf of [a] creditor are treated as if the creditor itself placed the call."  *Id.* at 565, ¶ 10.

15.     The FCC has express authority to prescribe regulations to implement the TCPA. 47 U.S.C. § 227(b)(2); *see also* 47 C.F.R. § 64.1200 (implementing regulations).

16.     Under the Hobbs Act (*see* 28 U.S.C. § 2342), this Court is bound by the FCC Rulings. *Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110, 1119-20 (11th Cir. 2014).

17.     Whether consent to call the 5307 Number was provided by Plaintiff to Defendants because the 5307 Number was contained in the Construction Agreement  ACA Order at 564, ¶ 9 ("We conclude that the provision of a cell phone number to a creditor, e.g., as part of a credit application, reasonably evidences prior express consent by the cell phone subscriber to be contacted at that number regarding the debt.").

18.     Whether the statement in Report & Order, *In the Matter of Rules & Regs. Implementing the Tel. Cons. Prot. Act of 1991*, 7 FCC Rcd. 8752, 8769, ¶ 31 (1992)  that "persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary" is applicable because the Construction Agreement was not supplied during the transaction that resulted in the debt owed. *See ACA Order at 564-65, ¶ 10* (FCC emphasized that "prior express consent is deemed to be granted only if the wireless number was provided by the consumer to the creditor, and that such number was provided during the transaction that resulted in the debt owed."). *See also Nigro v. Mercantile Adjustment Bureau, LLC,* 769 F.3d 804, 806–07 (2d Cir.2014) (holding that a third party did not give his prior express consent to be called about a debt when he gave his number outside of the context of the debt).

19.     Whether the Cisco dialing system and/or the Cameo dialing system is an ATDS under the TCPA. 47 U.S.C. § 227(a)(1).  *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 (9th Cir. 2009) (a dialing system "need only have the capacity" to function as an autodialer); 2015 TCPA Order at ¶ 16 ("the capacity of an autodialer is not limited to its current configuration but also includes its potential functionalities.").

20.     Whether Defendants violated the TCPA.

21.     Whether Defendants' violations of the TCPA were willful. *Lary v. Trinity Physician Fin. & Ins. Servs.*, 780 F.3d 1101, 1107 (11th Cir. 2015) ("[t]he requirement of 'willful or knowing' conduct requires the violator to know he was performing the conduct that violates the statute.").

22.     Whether the amendment to the TCPA allowing certain calls to cell phones to be made without consent in the Budget Bill of 2015 is inapplicable because the Federal Deposit Insurance Corporation ("**FDIC**"), acting as a receiver, is not the "United States Government." *See O'Melveny & Myers v. Fed. Deposit Ins. Corp.,* 512 U.S. 79, 81-82, 85 (1994) ("the FDIC is not the United States").

23.     Whether the amendment to the TCPA allowing certain calls to cell phones to be made without consent in the Budget Bill of 2015 has gone into effect. *See*, Report & Order, *In the Matter of Rules and Regs. Implementing the Tel. Cons. Prot. Act of 1991*, 31 FCC Rcd. 9074, 9097-98, ¶60 (2016)("The rules that give effect to this interpretation of Congress' intent are delayed by PRA requirements and OMB approval. We determine that the regulatory scheme we implement today must include both the ability for callers to make calls and the right of debtors to ask that calls stop—and that both portions of the regulatory scheme become effective simultaneously. To do otherwise would be to allow

callers to make calls but to leave debtors with no consumer protections until OMB approval is complete. We determine that both portions of the rules must become effective for the regulatory scheme to be effective.").

24.     Whether the amendment to the TCPA is retroactive. *Cabello v. Fernandez-Larios*, 402 F.3d 1148, 1154 (11th Cir. 2005); *Resolution Trust Corp. v. Ford Motor Credit Corp.*, 30 F.3d 1384, 1388 (11th Cir. 1994); *Fikes v. Wal-Mart, Inc.*, 322 F. App'x 882, 883 n. 1 (11th Cir. 2009).

25.      Whether RoundPoint violated the FCCPA.

26.     Whether Section 559.72(7) of the FCCPA requires that a defendant **intend** to harass or abuse a debtor as an element of the cause of action. What does the word "willfully" modify, the conduct or the result? *McCaskill v. Navient Sols., Inc.*, 178 F. Supp. 3d 1281, 1297 (M.D. Fla. 2016)(Court states "[p]laintiff is entitled to have a factfinder determine whether the calls were harassing or abusive under the FDCPA and FCCPA" with no mention of "intent" as an element).

**Defendants' Proposed Issues of Law:**

   *A.*       *TCPA - Elements Plaintiff Must Establish*

1.     Whether Plaintiff's has Article III standing for each individual call.  *See Spokeo, Inc. v. Robins,* 136 S.Ct. 1540, 1547 (2016), *as revised* (May 24, 2016); *Romero v. Dep't Stores Nat'l Bank*, Case No. 15-CV-193-CAB- MDD, 199 F.Supp.3d 1256 (S.D. Cal. 2016); *Supply Pro Sorbents, LLC v. Ringcentral, Inc.*, No. C 16-02113 JSW, 2016 WL 5870111 (N.D. Cal. Oct. 7, 2016); *Kostmayer Constr., LLC v. Port Pipe & Tube, Inc.*, No. 2:16-CV-01012, 2016 WL 6143075 (W.D. La. Oct. 19, 2016); *Smith v. Aitima Med. Equip., Inc.*, No. ED 16 CV 339 ABD-TBX, 2016 WL 4618780 (C.D. Cal. July 29,

2016); *Ewing v. SQM US Inc.*, 211 F.Supp.3d 1289 (S.D. Cal. Sept. 29, 2016); *ARcare v. Qiagen N. Am. Holdings, Inc.,* Case No. CV 16-7638 PA (Asx), 2017 WL 449173 (C.D. Cal. Jan. 19, 2017).

2.      Whether Plaintiff has Article III standing for each unanswered call that he did not hear ring. *Romero*, 199 F.Supp.3d at 1261.

3.      Whether Plaintiff's has Article III standing for each unanswered call that he heard ring. *Id.*

4.      Whether Plaintiff can sufficiently connect each call to his alleged harm. *Id.*

5.      That the FCC has held that "the basic functions of an autodialer are to dial numbers ***without human intervention*** and to dial thousands of numbers in a short period of time." *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991 Am. Ass'n of Healthcare Admin. Mgmt.*, 30 F.C.C. Rcd. 7961 (2015) (emphasis added).

6.      Whether Plaintiff has established that each call made by RoundPoint to him was made using an autodialer because each call did not require human intervention. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991 Am. Ass'n of Healthcare Admin. Mgmt. et. al.*, 30 F.C.C. Rcd. 7961 (2015); *Pozo v. Stellar Recovery Collection Agency, Inc.*, Case No. 8:15-cv-929-T-AEP, 2016 WL 7851415, at *3 (M.D. Fla. Sept. 2, 2016); *Legg v. Voice Media Grp., Inc.*, 20 F.Supp.3d 1370, 1376 (S.D. Fla. 2014).

7.      Whether RoundPoint was Multibank's "authorized representative with apparent authority" under the "common law principles of agency" standards articulated by the

FCC and Florida federal courts. *See In the Matter of the Joint Petition Filed by Dish Network, LLC, the United States of Am., & the States of California, Illinois. N. Carolina, & Ohio for Declaratory Ruling Concerning the Tel. Consumer Prot. Act (TCPA) Rules*, 28 F.C.C. Rcd. 6574, 6592 (2013); *Strauss v. CBE Group, Inc.,* 173 F.Supp.3d 1302, 1309 (S.D. Fla. 2016), *reconsideration denied*, 2016 WL 4402270 (S.D. Fla. June 8, 2016).

**B.     *TCPA - Defenses***

8.     That the FCC has defined prior express consent as: "persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary." *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 7 F.C.C. Rcd. 8752, 8769 (1992) (internal quotation marks omitted).

9.     Whether consent to call the 5307 Number was provided by Plaintiff directly in the Construction Agreement because the number was provided in connection with the transaction which resulted in Plaintiff's debt. *See Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1251 (11th Cir. 2014).

10.     Whether consent to call the 5307 Number was transferred by Plaintiff's builder to his lender since Plaintiff did not instruct otherwise. *Johnson v. Credit Protection Ass'n, L.P.*, 11-80604-CIV, 2012 WL 5875605 *4 (S.D. Fla. Nov. 20, 2012).

11.     Whether consent to call the 5307 Number was transferred by Plaintiff's builder to his lender since the building of his home and the funds lent to him for that purpose were part of the same commercial transaction. *Baisden v. Credit Adjustments, Inc*., 813 F.3d 338, 340 (6th Cir. 2016).

12.     That actual agency may occur where it is either expressly or impliedly granted. *Taco Bell of Cal. v. Zappone*, 324 So. 2d 121, 123 (Fla. 2d DCA 1975).

13.     That actual agency can even exist where both the principal and the agent deny the relationship.  *See Cleveland Compania Maritima, S.A. Panama v. Logothetis*, 378 So. 2d 1336, 1338 (Fla. 2d DCA 1980).

14.     Whether, like actual authority, apparent authority can arise from express or implied consent.  *Thomkin Corp. v. Miller*, 156 Fla. 388, 24 So. 2d 48, 49 (1945).

15.     Whether "[a] principal can create the appearance of an agent's authority by 'knowingly permit[ing] [an] agent to act in a certain manner as if he were authorized.'" *Ja Dan, Inc. v. L-J, Inc.*, 898 F. Supp. 894, 900 (S.D. Fla. 1995).

16.     That a principal's manifestations can be conveyed indirectly through an agent so long as the principal also makes direct manifestations.  *Ja Dan, Inc.*, 898 F. Supp. at 900 ("[Principal's] actions, in combination with those of [it's agent], gave the reasonable appearance that [agents] had the authority to contract [on principal's] behalf").

17.     Whether Lori Harrington had actual or implied authority to convey Plaintiff's personal information, including the 5307 Number to her and Plaintiff's joint creditors. *Taco Bell of Cal. v. Zappone*, 324 So. 2d 121, 123 (Fla. 2d DCA 1975); *Osorio*, 746 F.3d at 1251.

18.     Whether Plaintiff manifested to RoundPoint that Lori Harrington had actual authority to convey the 5307 Number because they were married, were co-obligors on the Loan and because Plaintiff never indicated to RoundPoint that she was not authorized to

take action in connection with the Loan.  *Ja Dan, Inc. v. L-J, Inc.,* 898 F. Supp. 894, 900 (S.D. Fla. 1995).

19.     Whether RoundPoint could reasonably rely on the Harringtons' relationship and salient personal information provided during the June 2, 2011 to infer that the caller had the authority to convey the 5307 Number.  *Ja Dan, Inc.,* 898 F. Supp. 894 at 900.

20.     Whether Lori Harrington had authority to convey the 5307 Number to joint creditors because it was incidental to or reasonably necessary to accomplish her goals to speak with her and Plaintiff's joint creditors.  *See Bd. of Trustees of City of Delray Beach Police & Firefighters Ret. Sys. v. Citigroup Glob. Markets, Inc*., 622 F.3d 1335, 1342–43 (11th Cir. 2010).

21.     Whether this Court has already found that Jamie Harrington had authority to convey the 5307 Number to RoundPoint based upon the authority conferred by Lori Harrington to discuss the Loan with RoundPoint. (ECF No. 140 at 16).

22.     Whether Jamie Harrington had authority to convey the 5307 Number to RoundPoint because it was incidental to or reasonably necessary to accomplish her goal to obtain insurance information on the Loan.  *See id*.

23.     Whether RoundPoint believed in good faith that it had consent to call the Plaintiff as a result of the provision of this number in the Construction Agreement, during a call to Roundpoint on November 29, 2010 and during a second call on June 2, 2011. *See Chyba v. First Fin. Asset Mgmt., Inc.*, Case No. 12-cv-1721-BEN(WVG), 2014 WL 1744136, at *11 (S.D. Cal. Apr. 30, 2014), *aff'd*, 2016 WL 7407274 (9th Cir. Dec. 22, 2016); *Danehy*

*v. Time Warner Cable Enter. LLC*, Case No. 14-cv-133-FL, 2015 WL 5534285, at *3 (E.D.N.C. Sept. 18, 2015).

24.    That Florida courts have defined ratification as "the express or implied adoption by a person of an act or contract entered into in his behalf by another without authority." *Port Largo Club, Inc. v. Warren*, 476 So. 2d 1330, 1333 (Fla. 3d DCA 1985).

25.    Whether the TCPA's statutory damages, as applied, violate the due process clause of the Fifth Amendment because that are wholly disproportioned to the offense and obviously unreasonable.   U.S. Const. amend. V; *Texas v. Am. Blastfax, Inc.,* 164 F.Supp.2d 892, 900 (W.D. Tex. 2001); *Centerline Equip. Corp. v. Banner Pers. Serv., Inc.,* 545 F.Supp.2d 768, 778 (N.D. Ill. 2008); *Md. v. Universal Elections, Inc.,* 862 F.Supp.2d 457, 465 (D. Md. 2012), *aff'd*, 729 F.3d 370 (4th Cir. 2013).

26.    Whether calls were made willfully or knowingly in violation of the TCPA statute because RoundPoint knew it was (1) calling a cell phone, (2) using an ATDS, and (3) without consent.   47 U.S.C. § 227(b)(3); *Lary v. Trinity Physician Fin. & Ins. Services*, 780 F.3d 1101, 1107 (11th Cir. 2015).

27.    Whether "the debt [is] currently owed to or guaranteed by the federal government at the time the call [was] made" because the Loan is owned by a holding company in which the FDIC has a one-half ownership stake such that three calls per thirty-day period should be exempt from liability.  *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 31 F.C.C. Rcd. 9074, ¶¶ 1, 11, 20, 32; *Silver v. Pa. Higher Educ. Assistance Agency*, 2016 WL 1258629, at *2 (N.D. Cal. Mar. 31, 2016) *appeal pending* (*citing Landgraf v. USI Film Products*, 511 U.S. 244, 280 (1994)).

28.     Whether the FDIC in this case is acting as a government entity or a private party. *See generally*, *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 31 F.C.C. Rcd. 9074 (2016).

29.     Whether this provision exempting calls made to collect a debt owed to the government should be retroactively applied. *Silver*, 2016 WL 1258629, at *2.

30.     Whether Multibank is entitled to set off any deficiency judgment it secures against Plaintiff against any judgment obtained against it in this action.  *Massachusetts Cas. Ins. Co. v. Forman*, 600 F.2d 481, 483 (5th Cir. 1979).

**C.      FCCPA - Elements Plaintiff Must Establish**

31.     If this case must be dismissed for lack of standing under the TCPA, whether the FCCPA claims should also be dismissed. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.")

32.     Whether RoundPoint knew it was harassing Plaintiff or called with the specific purpose to harass Plaintiff.  *See Bacelli v. MFP, Inc*., 729 F.Supp.2d 1328, 1337 (M.D. Fla. 2010); *Brandt v. I.C. Sys., Inc*., 8:09-CV-126-T-26MAP, 2010 WL 582051, at *2 (M.D. Fla. Feb. 19, 2010).

33.     That the word "willful" means that the calls must be done consciously, and thus that the statute concerns both "the purpose as well as the frequency of the creditor's calls." *Story v. J.M. Fields, Inc.*, 343 So. 2d 675, 677 (Fla. 1st DCA 1977).

34.     Whether liability pursuant to Florida Statute § 559.72(7) depends on a fact-intensive inquiry including the frequency of the calls, the legitimacy of the creditor's

claim, the plausibility of the debtor's excuse, and the sensitivity or abrasiveness of the personalities of the callers. *See Story*, 343 So. 2d at 677.

35.     Whether the volume of calls to Plaintiff coupled with other nefarious circumstances, such as continuing to call after being asked to cease, using threats, yelling or abrasive personalities, made the calls harassing. *Tucker v. CBE Grp., Inc.*, 710 F.Supp.2d 1301, 1305–06 (M.D.Fla.2010); *Lardner v. Diversified Consultants Inc*., 17 F.Supp.3d 1215, 1225; *Saltzman v. I.C. Sys., Inc.,* Case No. 09-10096, 2009 WL 3190359, at *7 (E.D. Mich. Sept. 30, 2009); *Mimbs v. J.A. Cambece Law Office, P.C.,* 12-62200-CIV, 2013 WL 11982289, at *5 (S.D. Fla. July 31, 2013); *Mammen v. Bronson & Migliaccio, LLP*, 715 F.Supp.2d 1210, 1218 (M.D. Fla. 2009);  *Story v. J. M. Fields, Inc.*, 343 So. 2d 675, 677 (Fla. 1st DCA 1977); *Weaver v. Wells Fargo Bank N.A.,* 8:15-cv-1247-T-23TGW, 2015 WL 4730572, at *2 (M.D. Fla. Aug. 10, 2015).

36.     Whether the calls to Plaintiff continued after all such information about the debt and default had been communicated and reasonable efforts at persuasion and negotiation had failed.  *Story*, 343 So. 2d at 677; *Weaver*, 2015 WL 4730572, at *2.

37.     Whether the content of the calls reflected that RoundPoint was collecting a debt. *See Trent v. Mortg. Elec. Registration Sys., Inc.*, 618 F.Supp.2d 1356, 1360 (M.D. Fla. 2007), *aff'd*, 288 Fed. Appx. 571 (11th Cir. 2008); *See Read v. MFP, Inc.*, 85 So. 3d 1151, 1154 (Fla. 2d DCA 2012); *Parker v. Midland Credit Mgmt., Inc*., 874 F.Supp.2d 1353, 1358 (M.D. Fla. 2012).

38.     Whether RoundPoint was required to give the mini-Miranda by law.  *Garfield v. Ocwen Loan Servicing, LLC*, 811 F.3d 86, 89 (2d Cir. 2016).

39.     Whether RoundPoint's recitation of the mini-Miranda evidences an intent to collect a debt. *Id.*

**D.      FCCPA - Defenses**

40.     Whether RoundPoint's policies and procedures aimed at preventing more than three calls per day are reasonably adapted to prevent the violations which allegedly occurred in this case.

## XIII.    STATEMENT OF ANY DISAGREEMENT AS TO THE APPLICATION OF THE FEDERAL RULES OF EVIDENCE OR THE FEDERAL RULES OF CIVIL PROCEDURE

None.

## XIV.    MOTIONS REQUIRING ACTION BY THE COURT

1.     Defendants' Amended Motion to Exclude Expert Witness Testimony of Randall Snyder (ECF No. 128).

Respectfully submitted,

By: ___/s/ Chris R. Miltenberger___
  Chris R. Miltenberger
  Texas Bar Number:
  14171200

**The Law Office of Chris R.
Miltenberger, PLLC**

1340 N. White Chapel, Suite 100
Southlake, Texas 76092-4322
817-416-5060 (office)
817-416-5062 (fax)
chris@crmlawpractice.com

*Trial Counsel*
*Admitted Pro Hac Vice*

**Wenzel Fenton Cabassa, PA.**

Brandon J. Hill
Florida Bar Number: 37061
1110 North Florida Ave., Suite 300
Tampa, Florida 33602
Direct No.: 813-337-7992
Main No.: 813-224-0431
Facsimile: 813-229-8712
Email: bhill@wfclaw.com

***Attorneys for Plaintiff***

By: */s/ Eve A. Cann*_____
  Eve A. Cann
  Florida Bar No.: 40808
  *ecann@bakerdonelson.com*
  *mymarks@bakerdonelson.com*
  *OLS-eService@bakerdonelson.com*
  Angelica M. Fiorentino
  Florida Bar No.: 85886
  *afiorentino@bakerdonelson.com*
  *rgustafson@bakerdonelson.com*

**BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC**

SunTrust Center
200 South Orange Ave.
PO Box 1549
Orlando, Florida 32802-1549
Telephone:  (407) 422-6600
Facsimile:   (407) 841-0325

***Counsel for Multibank and RoundPoint***

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on June 21, 2017, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record and pro se parties in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner of those counsel or parties who are not authorized to receive electronically Notices of Electronic Filings.

Chris R. Miltenberger, Esquire
Law Office of Chris R. Miltenberger, PLLC
1340 N. White Chapel, Suite 100
Southlake, TX  76092-4322
*chris@crmlawpractice.com*

Brandon J. Hill, Esquire
Wenzel Fenton Cabassa, P.A.
1110 North Florida Avenue, Suite 300
Tampa, FL  33602
*bhill@wfclaw.com*

*/s/ Eve A. Cann*
Eve A. Cann